**UNITED STATES of America,**

v.

**Jerry DeJESUS, Defendant.**

No. CR. 99–728(JBS).

United States District Court, D. New Jersey.

July 19, 2001.

Robert J. Cleary, United States Attorney, by David A. Bocian, Assistant U.S. Attorney, Newark, NJ, for U.S.

Richard Coughlin, Federal Public Defender, by Lisa C. Evans, Assistant Federal Public Defender, Camden, NJ, for Defendant.

## OPINION UPON MOTION TO DISMISS INDICTMENT

SIMANDLE, District Judge.

This Court is called upon to address the issue whether the federal statute which criminalizes possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1), is facially unconstitutional as lying beyond the power of Congress under the Commerce Clause, in light of the recent jurisprudence of the Supreme Court restricting the reach of the Commerce Clause. The felon-in-possession statute, 18 U.S.C. § 922(g)(1) states:

> [i]t shall be unlawful for any person—(1) who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1).

Defendant Jerry DeJesus is charged with knowingly possessing a firearm, after having been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1) and 2. The defendant has moved to dismiss the indictment under the premise that 18 U.S.C. § 922(g)(1) is facially unconstitutional because the conduct being regulated by Congress in the statute does not have a substantial effect upon interstate commerce and thus does not constitute a valid exercise of Congress' authority under the Commerce Clause. The United States counters by arguing that this Court is bound by the Third Circuit decision in *United States v. Gateward*, 84 F.3d 670 (3d Cir.1996), which upheld the constitutionality of § 922(g)(1). For the reasons stated herein, defendant's motion to dismiss the indictment in this matter is denied.

## I. *BACKGROUND*

On October 1, 1999, Camden police, investigating a report of a stolen car in the area of Mt. Ephraim Avenue and Liberty Street in Camden, New Jersey, apprehended defendant Jerry DeJesus as he allegedly attempted to flee the scene of an accident involving a stolen car. A search conducted incident to defendant's arrest allegedly revealed defendant was in possession of an Arcadia Machine & Tool, .380 caliber, semi-automatic handgun.

On December 8, 1999, a Grand Jury, sitting in Camden, New Jersey, returned a one-count Indictment charging the defendant with being a felon-in-possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). On January 25, 2001, defendant was arraigned before the Honorable Robert B. Kugler, United States Magistrate Judge. Defendant is now before this Court seeking to dismiss the indictment on the grounds that the felon-in-possession of a firearm statute, 18 U.S.C. § 922(g)(1), violates the Commerce Clause of the United States Constitution, Art. I, § 8, and is therefore unconstitutional.

## II. DISCUSSION

### A. Legal Background

Under the Commerce Clause, Congress is empowered "to regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const., Art. I, § 8, cl. 3. This power has been construed broadly to allow Congressional regulation of many aspects of modern life.[1]

The legal landscape in this area changed, however, on April 26, 1995, with the ruling in *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). At issue in *Lopez* was the constitutionality of the GunFree School Zones Act of 1990, 18 U.S.C. § 922(q)(1)(A), which made it a federal offense "for any individual knowingly to possess a firearm at a place that the individual knows, or has reasonable cause to believe, is a school zone." 18 U.S.C. § 922(q)(1)(A).

In analyzing 18 U.S.C. § 922(q)(1)(A), the Supreme Court noted that Congressional power under the Commerce Clause may involve three categories of regulation: (1) Congress may regulate "the use of channels of interstate commerce"; (2) Congress may "regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities"; and (3) Congress may "regulate those activities having a substantial relation to interstate commerce ... i.e., those activities that substantially affect interstate commerce." *Id.* at 558–59, 115 S.Ct. 1624.

The government in *Lopez* tried to justify § 922(q) solely on the ground that "possession of a firearm in a local school zone ... substantially affect[s] interstate commerce." *Id.* at 563, 115 S.Ct. 1624. The Court found, however, that possession of a gun in a local school zone is "in no sense an economic activity that might, through repetition elsewhere, substantially affect any sort of interstate commerce." *Id.* at 567, 115 S.Ct. 1624. Furthermore, the Court noted that the statute "contains no jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce." *Id.* at 561, 115 S.Ct. 1624. Finally, the Court found that neither the statute nor its legislative history contained any findings concerning the affects upon interstate commerce of possession of a gun in a school zone. *Id.* at 563, 115 S.Ct. 1624.

The government asserted three separate grounds upon which possession of a gun in a "school zone" would substantially affect commerce. First, the government argued that possession of a gun in a school zone may result in an increase in violent crime which impacts society through higher insurance rates. *Id.* at 563–64, 115 S.Ct. 1624. Second, the government argued that violent crime reduces the "willingness of individuals to travel to areas within the country that are perceived to be unsafe." *Id.* at 564, 115 S.Ct. 1624. Finally, the government argued that the presence of guns in the educational environment threatens the ability of students to learn, which in turn creates a less productive

---

1. *See, e.g., Perez v. United States*, 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971) (holding that Congress may regulate the ability of a loan shark to offer illegal lines of credit, even though the particular transaction has no nexus with interstate commerce); *Katzenbach v. McClung*, 379 U.S. 294, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964) (upholding Title II of the Civil Rights Act of 1964 under the Commerce Clause); *Wickard v. Filburn*, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942) (holding that Congress may regulate the amount of wheat grown for personal consumption by a single farmer because of the aggregate effect on interstate commerce).

citizenry and adversely affects the national economy. *Id.*

The Court rejected these arguments, holding that with § 922(q)(1)(A) Congress had finally exceeded the outer boundaries of judicial deference to Congressional authority to regulate commerce. *Id.* Fearing a general federal police power under the guise of an omnipotent Commerce Clause power, the *Lopez* Court noted that anything that might lead to violent crime could be regulated under the government's "cost of crime" argument, as well as anything that was related to the productivity of individual citizens, including such areas of state law as family law and education. *Id.* Finding no other constitutional justification for the law, the Court found it unconstitutional. *Id.* at 568, 115 S.Ct. 1624.

Immediately after the *Lopez* decision, many criminal convictions and civil remedies became suspect as the constitutional bases of several statutes were challenged.[2] 18 U.S.C. § 922(g)(1) was no exception as its constitutional basis was challenged in the Third Circuit in *United States v. Gateward*, 84 F.3d 670 (3d Cir.1996). In *Gateward*, the Third Circuit upheld § 922(g)(1) by relying heavily on two Supreme Court cases that addressed the interstate commerce aspect of 18 U.S.C. § 1202(a), the predecessor statute to § 922(g)(1), which made any felon "who receives, possesses, or transports in commerce . . . any firearm" guilty of a federal offense. 18 U.S.C. § 1202(a)(repealed 1986).

In the first case relied on by the *Gateward* Court, *United States v. Bass*, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971), the Supreme Court held that the government must prove as an essential element of the offense that a possession, receipt or transportation was "in commerce or affecting commerce." Indeed, the court noted that, "[a]bsent proof of some interstate commerce nexus in each case, § 1202(a) dramatically intrudes upon traditional state criminal jurisdiction." *Id.* at 349, 92 S.Ct. 515. Thus, the *Bass* Court set aside the conviction because, although the Government had demonstrated that Bass had possessed a firearm, it had failed "to show the requisite nexus with interstate commerce." *Id.* at 347, 92 S.Ct. 515. Hence, the requirement of the jurisdictional element to establish an interstate nexus to the possession of a firearm by a convicted felon was born.

In the second case relied on by the *Gateward* Court, *Scarborough v. United States*, 431 U.S. 563, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977), the Supreme Court clarified the requirements of the interstate commerce nexus. In *Scarborough*, the Court held that proof that possessed firearms had previously traveled in interstate commerce was sufficient to satisfy the statute's "in commerce or affecting commerce" nexus requirement. *Id.* at 577, 97 S.Ct. 1963.

Using these two cases as a guide, the Third Circuit found that *Lopez* did not undercut the *Bass/Scarborough* proposition that the jurisdictional element " 'in or affecting commerce' keeps the felon firearm law well inside the constitutional fringes of the Commerce Clause." *Gate-*

---

**2.** In the year after *Lopez*, a number of federal statutes were challenged in the lower federal courts based on it. Most of these challenges were unsuccessful, *See, e.g., Cheffer v. Reno*, 55 F.3d 1517 (11th Cir.1995) (upholding 18 U.S.C. § 248 Freedom of Access to Clinic Entrance Act); *United States v. Hanna*, 55 F.3d 1456 (9th Cir.1995) (upholding 18 U.S.C. § 922(g)(1), Possession of a Firearm by a convicted Felon); *United States v. Wilks*, 58 F.3d 1518 (10th Cir.1995) (upholding 18 U.S.C. § 922(*o*), Possession of a Machine Gun); *United States v. Bishop*, 66 F.3d 569 (3d Cir.1995) (upholding 18 U.S.C. § 2119 Carjacking).

*ward,* 84 F.3d at 671. Further, the *Gateward* Court read the *Lopez* opinion to mean that the Supreme Court invalidated § 922(q) because "by its terms [§ 922(q) ] has nothing to do with 'commerce' or any sort of economic enterprise, however broadly one might define those terms," and because " § 922(q) contains no jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce." *Lopez,* 514 U.S. at 561, 115 S.Ct. 1624.

Thus, the *Gateward* Court distinguished § 922(q) from § 922(g)(1) by finding that Congress had drafted § 922(g)(1) to *include* a jurisdictional element which, in light of the *Lopez* decision, "buttresses the validity of the felon firearm statute." *Gateward,* 84 F.3d at 671.

The importance of the jurisdictional element in the Third Circuit was further magnified in another post-*Lopez* case, *United States v. Bishop,* 66 F.3d 569 (3d Cir.1995). In *Bishop,* the Third Circuit upheld 18 U.S.C. § 2119, the federal anti-carjacking statute, against a post-*Lopez* Commerce Clause challenge by distinguishing the statute in *Lopez* from § 2119 because "unlike the statute in *Lopez,* section 2119 contains a 'jurisdictional element' which ostensibly limits is application to activities substantially related to interstate commerce." *Id.* at 585, 115 S.Ct. 1624. The *Bishop* Court further reasoned that "the Supreme Court decisions in *Bass* and *Scarborough* compel the conclusion that the jurisdictional element in section 2119 provides a nexus sufficient to protect the statute from constitutional infirmity." *Id.* Thus, the Third Circuit concluded that, in the post-*Lopez* era, a jurisdictional element can be enough to provide the necessary nexus to interstate commerce.

**B.** *Consideration of Defendant's Claim that 18 U.S.C. § 922(g)(1) is Unconstitutional*

Here, defendant argues that § 922(g)(1) is an invalid exercise of Congress' authority under the Commerce Clause despite the binding precedent in *Gateward* that § 922(g)(1) is constitutional. (Def.'s Br. at 3.) The defendant claims *Gateward* should be discarded by this Court because it is based on the flawed assumption that *Lopez* was a limited holding. (*Id.* at 2.)

The defendant offers the Supreme Court's two recent opinions in *United States v. Morrison,* 529 U.S. 598, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000), and *Jones v. United States,* 529 U.S. 848, 120 S.Ct. 1904, 146 L.Ed.2d 902 (2000), as evidence of a permanent and fundamental shift in the Supreme Court's Commerce Clause jurisprudence away from Congressional deference and towards a preservation of federalist principles. However, these two cases do not specifically address the question of whether or not the reasoning in *Gateward* is flawed or that the precedent upon which it is established are overruled.

In *Morrison,* the Supreme Court struck down 42 U.S.C. § 13981, which provided a civil remedy for the victims of gendermotivated violence. Using the three-prong analysis of *Lopez,* the Court found that § 13981 did not fall within either of the first two categories of activity that Congress may regulate under its commerce power. *Morrison,* 529 U.S. at 609, 120 S.Ct. 1740. Thus, the Court considered whether the statute could be considered a regulation of activity that substantially affects interstate commerce. *Id.* Applying the same four factors that it had in *Lopez,* the Court found that it could not. *Id.* at 619, 115 S.Ct. 1624. Thus, the Court's majority "reject[ed] the argument that Congress may regulate noneconomic, violent criminal conduct based solely on that

conduct's aggregate affect on interstate commerce." *Id.* at 617, 115 S.Ct. 1624. The Court also relied on the fact that § 13981 does not contain a jurisdictional element that provides the necessary nexus to interstate commerce. *Id.* at 613, 115 S.Ct. 1624. In fact, the Court wrote that "such a jurisdictional element would lend support to the argument that § 13981 is sufficiently tied to interstate commerce." *Id.*

However, unlike the statutes at issue in either *Lopez* or *Morrison,* § 922(g)(1) includes an express jurisdictional element requiring the government to provide evidence in each prosecution of a sufficient nexus between the charged offense and interstate or foreign commerce. By including this express jurisdictional element, Congress effectively "limit[ed] [the statute's] reach to a discrete set of firearm possessions that have an explicit connection with or affect on interstate commerce." *Morrison,* 529 U.S. at 611–12, 120 S.Ct. 1740 (quoting *Lopez,* 514 U.S. at 562, 115 S.Ct. 1624). Thus, the jurisdictional element in § 922(g)(1) puts it into a different category of analysis than the laws considered in *Lopez* and *Morrison.* In *Gateward,* the Third Circuit relied on the presence of a jurisdictional element to uphold § 922(g)(1) after *Lopez* and *Morrison* does not require this Court to reach a different conclusion in this case.

Second, DeJesus's reliance on *Jones* in support of his constitutional argument is misplaced. In *Jones v. United States,* 529 U.S. 848, 120 S.Ct. 1904, 146 L.Ed.2d 902 (2000), the defendant was convicted of throwing an explosive device into an owner-occupied residence in violation of 18 U.S.C. § 844(i), which prohibits damaging or destroying "by means of fire or any explosive, any ... property used in interstate or foreign commerce or in any activi-

ty affecting interstate commerce." 18 U.S.C. § 844(i). The defendant challenged his conviction, arguing that, when applied to the arson of an owner-occupied residence, § 844(i) exceeded Congress' authority under the Commerce Clause.

In reversing the conviction of the defendant, the Supreme Court concluded that 18 U.S.C. § 844(i) did not reach arson of an owner-occupied residence, since such property could not be said to have been "used in ... any activity affecting ... commerce" as required by the statute. *Jones,* 529 U.S. at 854, 120 S.Ct. 1904. In construing the arson statute in this fashion, the Court avoided the constitutional question that would have arisen under *Lopez* had it read § 844(i) to cover such "traditionally local criminal conduct." *Id.*

Thus *Jones* is a ruling of statutory interpretation that adds little to the analysis of *Gateward.* While the law challenged in *Jones,* the federal arson statute, did have a jurisdictional element, the challenge was as applied rather than the facial attack posed by the defendant in this case. The Court in *Jones* considered the connection of a specific non-mobile home to interstate commerce and found it wanting, but this decision has little impact on the assessment of whether firearms moved through interstate commerce are subject to Congressional regulation. Indeed, the limited holding in *Jones* does nothing to call *Gateward* into question and may even strengthen the precedent upon which it is based because the Supreme Court again recognized the necessity of the jurisdictional element to limit the reach of statutes empowered by the Commerce Clause.

Moreover, every Court of Appeals to have considered the constitutionality of 18 U.S.C. § 922(g)(1) after *Morrison* and *Jones* has upheld the statute, including

decisions of the First,[3] Second,[4] Fourth,[5] Sixth,[6] Seventh,[7] Ninth,[8] and Tenth[9] Circuits. The Supreme Court has denied certiorari in the Second, Seventh and Tenth Circuit cases,[10] while petitions for certiorari were only recently filed in the First and Ninth Circuit cases and remain pending.[11]

In light of the foregoing, the Court concludes that neither *Morrison* nor *Jones* have undermined, let alone overruled, the Third Circuit's holding in *Gateward.* Therefore, this Court is bound by the decision of the Third Circuit in *Gateward* because no subsequent Supreme Court opinion overturns the rationale used in that case or overrules the Supreme Court precedent upon which it is based, including *Bass* and *Scarborough, supra.*[12] Thus, to grant defendant's request that this Court disregard *Gateward* as bad law would require this Court to overlook viable Supreme Court and Third Circuit precedent, which it is unable to do. As Justice Kennedy once explained:

> If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should

**3.** *United States v. Costigan,* No. 00–2457, 2001 WL 535734, at *3 (1st Cir. March 26, 2001), *petition for cert. filed* (U.S. June 20, 2001) (No. 00–10721) ("Post-*Morrison,* courts have uniformly held that *Morrison* does not affect the conclusion that § 922(g) is within Congressional authority under the Commerce Clause.").

**4.** *United States v. Santiago,* 238 F.3d 213, 216–17 (2d Cir.), *cert. denied,* —— U.S. ——, 121 S.Ct. 2016, 149 L.Ed.2d 1016 (2001) ("Neither *Morrison* nor *Jones* requires us to revisit our holding ... that § 922(g), as interpreted prior to *Lopez,* is properly within Congress's authority under the Commerce Clause.").

**5.** *United States v. Gallimore,* 247 F.3d 134, 138 (4th Cir.2001) ("We therefore hold, in accord with every other circuit to consider this issue, that *Morrison* and *Jones* do not affect our post-*Lopez* decisions regarding § 922(g).").

**6.** *United States v. Napier,* 233 F.3d 394, 401–02 (6th Cir.2000) ("Nothing in *Jones* suggests that the Supreme Court is backing off its opinion that § 1202(a), the predecessor of § 922(g)(1), required only 'the minimal nexus that the firearm have been, at some time, in interstate commerce.' ").

**7.** *United States v. Wesela,* 223 F.3d 656, 659–60 (7th Cir.2000), *cert. denied,* —— U.S. ——, 121 S.Ct. 1145, 148 L.Ed.2d 1008 (2001) ("Nothing in either case [*Morrison* or *Jones* ] casts doubt on the validity of § 922(g), which is a law that specifically requires a link to interstate commerce.").

**8.** *United States v. Davis,* 242 F.3d 1162, 1162–63 (9th Cir.2001), *petition for cert. filed* (U.S. June 18, 2001) (No. 00–10772).

**9.** *United States v. Dorris,* 236 F.3d 582, 585–86 (10th Cir.2000), *cert. denied,* —— U.S. ——, 121 S.Ct. 1635, 149 L.Ed.2d 495 (2001) ("The decisions in *Morrison* and *Jones* give no reason beyond what was already present in *Lopez* to find § 922(g)(1) beyond Congress' Commerce Power.").

**10.** *See United States v. Santiago,* 238 F.3d 213, 216 (2d Cir.), *cert. denied,* —— U.S. ——, 121 S.Ct. 2016, 149 L.Ed.2d 1016 (2001); *United States v. Wesela,* 223 F.3d 656, 659–60 (7th Cir.2000), *cert. denied,* —— U.S. ——, 121 S.Ct. 1145, 148 L.Ed.2d 1008 (2001); *United States v. Dorris,* 236 F.3d 582, 585–86 (10th Cir.2000), *cert. denied,* —— U.S. ——, 121 S.Ct. 1635, 149 L.Ed.2d 495 (2001).

**11.** *See United States v. Castigan,* No. 00–2457, 2001 WL 535734 at *3 (1st Cir. March 26, 2001), *petition for cert. filed* (U.S. June 20, 2001) (No. 00–10721); *United States v. Davis,* 242 F.3d 1162, 1162–63 (9th Cir.2001), *petition for cert. filed* (U.S. June 18, 2001) (No. 00–10772).

**12.** In fact, after *Lopez,* the Supreme Court cited both *Bass* and *Scarborough* favorably in *Morrison. United States v. Morrison,* 529 U.S. 598, 658, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000). *Bass* is also cited favorably in *Jones. Jones v. United States,* 529 U.S. 848, 849, 120 S.Ct. 1904, 146 L.Ed.2d 902 (2000).

follow the case that directly controls, leaving to this Court the prerogative of overruling its own decisions.

*Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989).

Thus, even though the question may remain open whether or not the Supreme Court will eventually find § 922(g)(1) unconstitutional, it is not for this Court to overstep *Gateward* or to predict its eventual demise in the Supreme Court. This Court holds that § 922(g)(1) is not unconstitutional on its face in light of existing precedent. As in *Scarborough* and *Gateward supra,* the statute's essential element that the possessed firearm previously traveled in interstate commerce satisfies Commerce Clause requirements for such regulated activity.

## III. *CONCLUSION*

For the reasons stated above, defendant's motion to dismiss the Indictment for lack of federal jurisdiction charging him with violating § 922(g)(1), is denied. The accompanying Order is entered.

## ORDER

This matter having come before the Court upon the motion of defendant, Jerry DeJesus, for an order dismissing the December 8, 1999, Indictment charging the defendant with violating 18 U.S.C. § 922(g)(1); and

The Court having considered the parties' submissions; and having heard oral argument on June 29, 2001; and

The Court having found, for reasons stated in its Opinion filed today, that this motion should be denied;

**IT IS** this—day of July, 2001, hereby **ORDERED** that defendant's motion to dismiss the Indictment shall be, and hereby is, **DENIED.**