**UNITED STATES of America,**

v.

**Mark SWIDA, Defendant.**

**No. 3:CR–98–295.**

United States District Court,
M.D. Pennsylvania.

Jan. 15, 2002.

Joseph M. Cosgrove, Forty Fort, PA, Mark Swida, Wilkes-Barre, PA, Gerard Edmund Grealish, Scranton, PA, for Defendant.

John C. Gurganus, Jr., Assistant U.S. Attorney, U.S. Attorney's Office, Scranton, PA, for U.S.

## MEMORANDUM

VANASKIE, Chief Judge.

Defendant Mark Swida has moved to dismiss an indictment charging him with illegal possession of a machine gun, in violation of 18 U.S.C. § 922(o), on the ground that § 922(o) "is unconstitutional in that it was enacted in excess of the power to regulate interstate commerce." (Motion to Dismiss Indictment (Dkt. Entry 24) at ¶ 10.) Acknowledging that the Third Circuit has sustained the constitutionality of § 922(o) in the face of a Commerce Clause challenge based upon the Supreme Court's landmark decision in *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), *see United States v. Rybar*, 103 F.3d 273 (3d Cir.1996), *cert. denied*, 522 U.S. 807, 118 S.Ct. 46, 139 L.Ed.2d 13 (1997), Swida argues that the Supreme Court's subsequent explication of *Lopez* in *United States v. Morrison*, 529 U.S. 598, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000), vitiated the holding of the Third Circuit, as well as the decisions of the seven other courts of appeals that have upheld the constitutionality of § 922(o) since *Lopez* was decided.[1] Having carefully examined *Rybar*, *Morrison*, and post-*Morrison* case law, I find that, contrary to Swida's argument, *Morrison* does not undermine the essential holding of the Third Circuit in *Rybar*. Accordingly, the motion to dismiss the indictment will be denied.

## I. BACKGROUND

On December 1, 1998, Swida was indicted by the Grand Jury for this District for knowingly and unlawfully possessing a machine gun in violation of 18 U.S.C. § 922(o).[2] On February 19, 1999, Swida

---

1. Every Court of Appeals to have addressed the issue in the wake of *Lopez* sustained the constitutionality of § 922(o). *See, e.g., United States v. Franklyn*, 157 F.3d 90 (2d Cir.1998), *cert. denied*, 525 U.S. 1112, 119 S.Ct. 887, 142 L.Ed.2d 786 (1999); *United States v. Wright*, 117 F.3d 1265 (11th Cir.), *cert. denied*, 522 U.S. 1007, 118 S.Ct. 584, 139 L.Ed.2d 422 (1997); *United States v. Knutson*, 113 F.3d 27 (5th Cir.1997); *United States v. Kenney*, 91 F.3d 884 (7th Cir.1996); *United States v. Beuckelaere*, 91 F.3d 781 (6th Cir.1996); *United States v. Rambo*, 74 F.3d 948 (9th Cir.), *cert. denied*, 519 U.S. 819, 117 S.Ct. 72, 136 L.Ed.2d 32 (1996); *United States v. Wilks*, 58 F.3d 1518 (10th Cir.1995).

2. Section 922(o) provides:

entered a plea of guilty pursuant to a negotiated plea agreement. The Government subsequently moved for a continuance of sentencing so that Swida could complete "the cooperation phase of his Plea Agreement," and thereby afford the Government "additional time in which to make a decision whether a downward departure motion will be warranted ...." (Motion to Continue Sentencing (Dkt. Entry 19) at ¶ 4.) Sentencing was ultimately set for June 27, 2000. Shortly before the sentencing date, Swida, through counsel and with the concurrence of the Government, moved for a continuance of the sentencing so that he could mount his constitutional challenge to the indictment. The motion for adjournment of sentencing was granted, and Swida presented his motion to dismiss the indictment on July 10, 2000. The matter has been fully briefed and is ripe for disposition.

## II. DISCUSSION

■ "Every law enacted by Congress must be based on one or more of its powers enumerated in the Constitution." *Morrison*, 529 U.S. at 607, 120 S.Ct. 1740. Section 922(*o*) is based upon Congress' express authority "[t]o regulate Commerce ... among the several States." U.S. Const. Art. I, § 8, cl. 3. The Congressional determination that its authority under the Commerce Clause extends to banning intrastate possession of machine guns is

(1) Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machine gun.
(2) This subsection does not apply with respect to—
   (A) a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof; or
   (B) any lawful transfer or lawful possession of a machine gun that was lawfully possessed before the date this subsection takes effect.

entitled to a presumption of constitutionality. *See Morrison*, 529 U.S. at 607, 120 S.Ct. 1740; *United States v. Spinello*, 265 F.3d 150, 153 (3d Cir.2001).

■ In *Lopez*, the Court delineated three broad areas of regulation under the Commerce Clause: "(1) 'the use of the channels of interstate commerce'; (2) 'the instrumentalities of interstate commerce, or persons and things in interstate commerce, even though the threat may only come from intrastate activities'; and (3) 'those activities having a substantial relation to interstate commerce.'" *United States v. Singletary*, 268 F.3d 196, 201 (3d Cir.2001). In *Lopez*, the Court found that a federal statute making it an offense "for any individual knowingly to possess a firearm at a place that the individual knows, or has reasonable cause to believe, is a school zone," 18 U.S.C. § 922(q)(1)(A), fell within the third category of Commerce Clause regulation—"activities having a substantial relation to interstate commerce." 514 U.S. at 559, 115 S.Ct. 1624. Concluding that this legislation "neither regulated a commercial activity (possession of a gun near a school) nor contained a requirement that the possession of a firearm in a school zone be connected in any way to interstate commerce," *Singletary*, 268 F.3d at 200, the Court struck down § 922(q) as exceeding congressional authority under the Commerce Clause.

Section 922(*o*) was enacted as part of the 1986 Firearms' Owners Protection Act ("FOPA"), Pub.L. No. 99–308, 100 Stat. 449. The effective date of this legislation was May 19, 1986. Pub.L. No. 99–308, § 110(c), 100 Stat. 449, 461 (1986). It has been recognized that "[t]he statute prohibits only those instances of possession and transfer of machine guns not lawfully possessed before its enactment date—May 19, 1986; machine guns lawfully possessed before that date are left unaffected." *Rybar*, 103 F.3d at 276.

In *Rybar*, our Court of Appeals considered a *Lopez*-based challenge to § 922(*o*). A divided panel[3] concluded that the rationale of *Lopez* did not cover the congressional ban on intrastate possession of machine guns for at least three reasons. First, "unlike the situation in *Lopez*, there are legislative findings to aid the judicial evaluation of the effect of machine guns on interstate commerce." 103 F.3d at 279. Reviewing the legislative antecedents to the FOPA, Judge Sloviter observed:

> Congressional findings generated throughout Congress' history of firearm regulations link both the flow of firearms across state lines and their consequential indiscriminate availability with the resulting violent criminal acts that are beyond the effective control of the states. Thus, § 922(*o*) does not 'plow new ground,' as the *Lopez* majority said § 922(q) did. Rather than represent a sharp break in pattern, which concerned the *Lopez* Court, it continues in the stream of prior legislation.

*Id.*[4]

A second basis for distinguishing Lopez was that "[u]nlike the conclusion in *Lopez* that 'possession of a gun in a local school zone is in no sense an economic activity that might, through repetition elsewhere, substantially affect any sort of interstate commerce,' it is evident from § 922(*o*) that 'possession and transfer' of a machine gun is an economic activity that Congress could reasonably have believed would be repeated elsewhere and thereby substantially affect interstate commerce." *Id.* at 282. Responding to the dissent's criticism of the conclusion that "possession and transfer" of a machine gun reflects "economic activity," the majority pointed out that "in most situations, ... possession follows an unlawful transfer." *Id.* at 283.[5] The majority explained that "§ 922(*o*) can be sustained because it targets the possession of machine guns as a demand-side stimulus that prospective acquisition would have on the commerce in machine guns." *Id.*

A third reason for distinguishing *Lopez* was that, unlike § 922(q), the ban on intrastate possession of machine guns was "an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated." *Lopez*, 514 U.S. at 561, 115 S.Ct. 1624. On this point, the *Rybar* majority cited approvingly the Seventh Circuit's decision in *United States v. Kenney*, 91 F.3d 884 (7th Cir.1996), in which the court found that " 'there is a rational basis to regulate the local conduct of machine gun possession, including possession resulting from home manufacture, to effectuate § 922(*o*)'s purpose of freezing the number of legally possessed machine guns at 1986 levels, an effect that is closely entwined with regulating interstate commerce.' " 103 F.3d at 283.

---

**3.** The majority opinion was authored by then Chief Judge Sloviter. Judge Rendell, then a District Judge for the Eastern District of Pennsylvania, sitting by designation, joined in the majority opinion. Judge Alito wrote a vigorous dissent.

**4.** The majority in *Rybar* acknowledged that the legislative history on which they relied was not created contemporaneously with the enactment of the FOPA, noting, "that the findings accompanying prior firearms legislation were not reiterated with the passage of

§ 922(*o*) is not controlling, as evidenced by a long line of Supreme Court cases." *Id.* at 281.

**5.** It should be noted that, in the matter *sub judice*, the Government asserts that Swida came to be in possession of a machine gun after paying Donald Bachman to install a modified trigger group on a rifle, thereby converting it to a fully automatic mode. Thus, Swida possessed a machine gun as a result of a commercial transaction.

■ The *Rybar* majority concluded that "the authority of Congress to enact § 922(*o*) under the Commerce Clause can be sustained under the third category identified by the Supreme Court: as a regulation of an activity that 'substantially affects' commerce." *Id.* In reaching this result, the *Rybar* majority adhered to the settled two-pronged approach to the analysis of congressional enactments under the Commerce Clause: (1) "Whether Congress could rationally conclude that the regulated activity substantially affects interstate commerce," 103 F.3d at 278; and (2) if it could, "whether 'the means chosen by [Congress] [are] reasonably adapted to the end permitted by the Constitution.'" *Id.* Citing *Kenney*, the *Rybar* majority observed that in view of prior legislative enactments and congressional findings, "Section 922(*o*) 'was not novel but incremental,' and thus justified 'deference to Congress' accumulated institutional expertise.'" *Id.* at 283–84, quoting *Kenney*, 91 F.3d at 890–891.[6]

After determining that Congress could rationally find that intrastate possession of machine guns substantially affected interstate commerce, and that its ban on such possession was reasonably adapted to the permissible regulation of interstate commerce, the *Rybar* majority addressed the contention that § 922(*o*) was nonetheless constitutionally deficient because it lacked a " 'jurisdictional element,' " the term used to refer to a statutory clause (such as "in or affecting interstate commerce") that limits application of the statute to those instances where the particular machine gun transfer or possession is shown to be related to interstate commerce. *Id.* at 285.[7] Concluding that the Supreme Court had not made a jurisdictional element a *sine qua non* of the valid exercise of commerce clause authority, the *Rybar* majority held that its absence from § 922(*o*) did not require invalidation of the ban on intrastate possession of machine guns. *Id.*

Swida contends that, in light of the Supreme Court's explication of *Lopez* in *United States v. Morrison*, 529 U.S. 598, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000), *Rybar* is no longer controlling precedent in this Circuit. In *Morrison*, the Court invalidated 42 U.S.C. § 13981, which purported to establish a private cause of action for gender-motivated violence. As in *Lopez*, the court addressed the constitutionality of § 13981 "as a regulation of activity that substantially affects interstate commerce." 529 U.S. at 609, 120 S.Ct. 1740. Central to its invalidation of § 13981 was the Court's conclusion that the regulated conduct—violence against women—was not "in any sense of the phrase, economic activity." *Id.* at 613, 120 S.Ct. 1740. Writing for the majority, Chief Justice Rehnquist explained that "thus far in our Nation's history our cases

---

6. The *Rybar* majority also found support for their conclusion in decisions that had sustained § 922(*o*) as a permissible exercise of commerce clause power under the other two categories of regulation: "the use of the channels of interstate commerce," and "the instrumentalities of interstate commerce or persons and things in interstate commerce ...." *Lopez*, 514 U.S. at 558, 115 S.Ct. 1624. The *Rybar* majority explained that "[w]hatever the category relied on, it is telling that each of our sister Circuits has found that the regulation of machine gun transfer and possession comes with Congress' power to legislate under the Commerce Clause." 103 F.3d at 284–85.

7. The term "jurisdictional element" has also been defined as "a provision in a federal statute that requires the government to establish specific facts justifying the exercise of federal jurisdiction in connection with any individual application of the statute." *United States v. Rodia*, 194 F.3d 465, 471 (3d Cir. 1999), *cert. denied*, 529 U.S. 1131, 120 S.Ct. 2008, 146 L.Ed.2d 958 (2000).

have upheld Commerce Clause regulation of intrastate activity only where that activity is economic in nature." *Id.* In addition to determining whether the regulated activity can be regarded as economic in nature, Chief Justice Rehnquist suggested three other considerations relevant to a challenge to congressional exercise of commerce clause authority:

(1) the presence of "a jurisdictional element limiting the reach of the law to a discrete set of activities that additionally has an explicit connection with or affect on interstate commerce," *United States v. Gregg,* 226 F.3d 253, 262 (3d Cir.2000), *cert. denied,* —— U.S. ——, 121 S.Ct. 1600, 149 L.Ed.2d 467 (2001);

(2) the existence of "express congressional findings regarding the effects upon interstate commerce of the activity in question," *id.;* and

(3) "the link between the regulated activity and interstate commerce." *Id.*

■ Contrary to Swida's assertion, examination of *Rybar* in the context of the four considerations identified in *Morrison* does not compel the conclusion that *Rybar* is no longer good law. As to the first consideration—the economic nature of the regulated activity—*Rybar* explicitly found that "possession and transfer" of a machine gun is indeed "an economic activity." 103 F.3d at 282. Our Court of Appeals, in a post-*Morrison* decision, held that "although the connection to economic or commercial activity plays a central role in whether a law is valid under the Commerce Clause, ... economic activity can be understood *in broad terms.*" *Gregg,* 226 F.3d at 262 (emphasis added). The Tenth Circuit, in sustaining § 922(*o*) against a post-*Morrison* challenge, "agree[d] with the majority of circuits that, after *Morrison,* have concluded 'economic activity' should be read broadly to include activities that are closely linked to commercial

transactions." *United States v. Haney,* 264 F.3d 1161, 1170 (10th Cir.2001). As indicated above, the FOPA invalidated possession of a machine gun that came about only as a result of a transfer occurring after 1986. Thus, prohibited possession must necessarily follow unlawful transfer. Viewed broadly, the concept of "economic activity" embraces the transfer of a prohibited firearm—authority to control the commodity has been conveyed from one person to another. Accordingly, the conclusion of the *Rybar* majority that "possession and transfer" of a machine gun is "an economic activity" has not been disturbed by *Morrison.* On the contrary, consideration of the first factor in *Morrison* supports the conclusion in *Rybar.*

The second pertinent factor identified in *Morrison* concerned the existence of a "jurisdictional element" in the statute. Significantly, *Morrison* did not make the existence of a "jurisdictional element" an essential prerequisite to a valid exercise of Commerce Clause authority. Subsequent to *Morrison,* our Court of Appeals has reiterated its determination that a "jurisdictional element" is not a *sine qua non* of valid exercise of Commerce Clause authority. *See Spinello,* 265 F.3d at 155; *Gregg,* 226 F.3d at 263. Thus, *Morrison* does not undermine the conclusion in *Rybar* that the absence of a jurisdictional element from § 922(*o*) did not render it constitutionally deficient.

The third *Morrison* factor—the existence of legislative findings regarding the effects upon the activity in question—is satisfied here. The majority in *Rybar* reviewed at some length the legislative history pertinent to § 922(*o*). While the congressional findings concerned legislation pre-dating FOPA, nothing in *Morrison* indicates that it was inappropriate for the *Rybar* majority to rely upon that body of

legislative findings rationally related to the enactment of FOPA.

■ As to the final *Morrison* factor— the link between the regulated activity and interstate commerce—the *Rybar* majority concluded that the requisite nexus existed. As Judge Sloviter explained, a ban on possession constitutes a "demand-side measure to lessen the stimulus that prospective acquisition would have on the commerce in machine guns." 103 F.3d at 283. In a related context, Chief Judge Becker explained that a ban on intrastate possession of a prohibited item necessarily has a strong nexus on the interstate market in that prohibited item. *See Rodia,* 194 F.3d at 473–79 (sustaining a statute banning intrastate possession of child pornography against a Commerce Clause challenge). Chief Judge Becker explained that a regulation intended to limit demand for a prohibited item by making possession of that item illegal "provides a limiting principle of the type sought in *Lopez,* for the nexus [between the intrastate possession of and the interstate market in the prohibited item] will not be present in criminal regulations that attempt to limit

or ban behavior that does not involve an exchange of goods, such as murder or assault." *Id.* at 478–79. In *Lopez,* the activity in question was the possession of a firearm by the accused in a certain location—a school zone; in *Morrison,* the activity to be regulated was gender-motivated violence. In these scenarios, the nexus with interstate commerce is attenuated. But, in the case of "possession and transfer" of a machine gun, just as in the case of intrastate possession of child pornography, the nexus with interstate commerce is strong. In short, the ban on intrastate possession of machine guns is "an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated." *Lopez,* 514 U.S. at 561, 115 S.Ct. 1624.[8]

Significantly, *Morrison* did not sound a retreat from the position that regulation of wholly intrastate activity would be permissible if it were an integral component of a larger regulation of economic activity substantially affecting interstate commerce. *See Morrison,* 529 U.S. at 657, 120 S.Ct. 1740 (Breyer, J. dissenting)(The Court

---

8. In sustaining the intrastate ban on the possession of child pornography, our Court of Appeals cited with approval *United States v. Cardoza,* 129 F.3d 6 (1st Cir.1997), which upheld a congressional prohibition on the intrastate sale, transfer, delivery and possession of handguns to and by juveniles. Pertinent to the conclusion in the matter *sub judice* is the following statement from *Cardoza:*

As an initial matter we find that the [Youth Handgun Safety Act] is a regulation of economic activity. This is so because it prohibits expressly commercial activity, namely the sale, transfer or delivery of handguns to juveniles. It therefore stands in direct opposition to the statute invalidated in *Lopez,* which "by its terms had nothing to do with 'commerce' or any sort of economic enterprise." Similarly, ... the possessory prong of the YHSA ... is "an essential part of a wider regulation of economic activity, in which the regulatory scheme could be

undercut unless the intrastate activity were regulated." This is so because the YHSA was designed expressly to "stop the commerce in handguns with juveniles nationwide ...." Part of this regulatory approach involves the suppression of the demand for such handguns. The YHSA can be thus seen as the criminalization of the two points where the prohibited commerce finds its nexus: the demand for the firearms (possession) and the sale or transfer designed to meet that demand. The two prohibitions go hand in hand with one another. Invalidation of one half of the equation would likely have deleterious effects on the efficacy of the legislation. In this regard we think it clear that given Congress' express purpose, its decision to punish the supply (sale or transfer) and demand (possession) sides of the market is a means reasonably calculated to achieve its end. *Id.* at 12.

"would permit Congress to regulate where that regulation is 'an essential part of a larger regulation of economic activity, in which the regulatory scheme could be undercut unless the intrastate activity were regulated.'") Consistent with this observation, the Tenth Circuit, in the post-*Morrison* ruling cited above, has held that § 922(*o*) is constitutional as "an essential part of the federal scheme to regulate interstate commerce in dangerous weapons." *Haney*, 264 F.3d at 1168; *accord*, *United States v. Fleischli*, 119 F.Supp.2d 819, 822 (C.D.Ill.2000)(finding that *Morrison* did not undermine the Seventh Circuit's decision in *Kenney* that § 922(*o*) was a valid exercise of commerce clause authority); *see also United States v. Furrow*, 125 F.Supp.2d 1178, 1187 (C.D.Cal. 2000)(post-*Morrison* decision finding that § 922(*o*) was a permissible "regulation of the use of channels of interstate commerce (*Lopez* category One)").[9] Because the majority in *Rybar* regarded § 922(*o*) as an integral component of congressional regulation of the interstate market in machine guns, its holding remains binding in this Circuit.[10]

It is, of course, my responsibility to follow directly applicable precedent unless the rationale expressed in that precedent has been clearly undermined. If it merely appears that the reasoning of an otherwise controlling precedent has been "weakened" by pronouncements in subsequent Supreme Court decisions, I must still follow the directly applicable precedent, leaving to the Court of Appeals the prerogative of determining that the directly applicable precedent can no longer stand. *See Singletary*, 268 F.3d at 205. Just as the district court in *DeJesus* recognized that it did not have the prerogative to overstep a Third Circuit ruling sustaining the constitutionality of 18 U.S.C. § 922(g)(1) in light of *Morrison* and *Jones*, so too it is not for me to overstep *Rybar* or to predict its "eventual demise in the Supreme Court." *Id.* at 691. Accordingly, Swida's Commerce Clause challenge to § 922(*o*) must be rejected.[11]

### *CONCLUSION*

For the reasons set forth above, defendant's motion to dismiss the indictment

---

**9.** Swida argues that *Jones v. United States*, 529 U.S. 848, 120 S.Ct. 1904, 146 L.Ed.2d 902 (2000), is pertinent to an analysis of the constitutionality of § 922(*o*). I respectfully disagree. *Jones* avoided deciding the constitutionality of 18 U.S.C. § 844(i), which prohibits damaging or destroying by "means of fire or any explosive, any ... property used in interstate or foreign commerce or in any activity affecting interstate commerce." The Court in *Jones* interpreted the phrase "used in any activity affecting ... commerce" as requiring that the building that was the target of the arson be actively employed in interstate commerce. Accordingly, an owner-occupied residence could not be said to have been "used in ... any activity affecting commerce." *Jones* is therefore a statutory interpretation ruling that does not affect the analysis in *Rybar*. *See United States v. DeJesus*, 150 F.Supp.2d 684, 688 (D.N.J.2001)(concluding that *Jones* was not applicable to a constitutional challenge to the validity of a federal

statute criminalizing possession of a firearm by a convicted felon).

**10.** Swida has not cited, and independent research has not disclosed, a decision of any court invalidating § 922(*o*) under either *Lopez* or *Morrison*.

**11.** Although not mentioned in his motion to dismiss the indictment, Swida argues in his supporting brief that § 922(*o*) infringes upon the Second Amendment right to bear arms. This argument was squarely rejected in *Rybar*, 103 F.3d at 285–86, and Swida has not cited any precedent that suggests that the *Rybar* analysis of the Second Amendment issue has been vitiated. In this regard, the Tenth Circuit rejected a Second Amendment challenge to § 922(*o*) in its post-*Morrison* holding. *Haney*, 264 F.3d at 1164–66. Accordingly, Swida's Second Amendment claim is without merit.

will be denied. An appropriate Order follows.