529 U.S. 848 (2000)
JONES
v.
UNITED STATES
No. 99-5739.
United States Supreme Court.
Argued March 21, 2000.
Decided May 22, 2000.
CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT
*849 *850 Ginsburg, J., delivered the opinion for a unanimous Court. Stevens, J., filed a concurring opinion, in which Thomas, J., joined, post, p. 859. Thomas, J., filed a concurring opinion, in which Scalia, J.,joined, post, p. 860.
Donald M. Falk argued the cause and filed briefs for petitioner.
Deputy Solicitor General Dreeben argued the cause for the United States. With him on the brief were Solicitor General Waxman, Assistant Attorney General Robinson, Malcolm L. Stewart, and David S. Kris.[*]
Justice Ginsburg, delivered the opinion of the Court.
It is a federal crime under 18 U. S. C. § 844(i) (1994 ed., Supp. IV) to damage or destroy, "by means of fire or an explosive, any . . . property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce." This case presents the question whether arson of an owner-occupied private residence falls within § 844(i)'s compass. Construing the statute's text, we hold that an owner-occupied residence not used for any commercial purpose does not qualify as property "used in" commerce or *851 commerce-affecting activity; arson of such a dwelling, therefore, is not subject to federal prosecution under § 844(i). Our construction of § 844(i) is reinforced by the Court's opinion in United States v.Lopez, 514 U. S. 549 (1995), and the interpretive rule that constitutionally doubtful constructions should be avoided where possible, see Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Constr. Trades Council, 485 U. S. 568, 575 (1988).

I
On February 23, 1998, petitioner Dewey Jones tossed a Molotov cocktail through a window into a home in Fort Wayne, Indiana, owned and occupied by his cousin. No one was injured in the ensuing fire, but the blaze severely damaged the home. A federal grand jury returned a three-count indictment charging Jones with arson, 18 U. S. C. § 844(i) (1994 ed., Supp. IV); using a destructive device during and in relation to a crime of violence (the arson), 18 U. S. C. § 924(c); and making an illegal destructive device, 26 U. S. C. § 5861(f). Jones was tried under that indictment in the Northern District of Indiana and convicted by a jury on all three counts.[1] The District Court sentenced him, pursuant to the Sentencing Reform Act of 1984, to a total prison term of 35 years, to be followed by five years of supervised release. The court also ordered Jones to pay $77,396.87 to the insurer of the damaged home as restitution for its loss. Jones appealed, and the Court of Appeals for the Seventh Circuit affirmed the judgment of the District Court. 178 F. 3d 479 (1999).
Jones unsuccessfully urged, both before the District Court and on appeal to the Seventh Circuit, that § 844(i), when applied to the arson of a private residence, exceeds the authority vested in Congress under the Commerce Clause of the *852 Constitution, Art. I, § 8,cl. 3. Courts of Appeals have divided both on the question whether § 844(i) applies to buildings not used for commercial purposes,[2] and on the constitutionality of such an application.[3] We granted certiorari, 528 U. S. 1002 (1999), and framed as the question presented:
"Whether, in light of United States v. Lopez, 514 U. S. 549 (1995), and the interpretive rule that constitutionally doubtful constructions should be avoided, see Ed- ward J. DeBartolo Corp. v. Florida Gulf Coast Build- ing & Constr. Trades Council, 485 U. S. 568, 575 (1988), 18 U. S. C. § 844(i) applies to the arson of a private residence; and if so, whether its application to the private residence in the present case is constitutional." Satisfied that § 844(i) does not reach an owner-occupied residence that is not used for any commercial purpose, we reverse the Court of Appeals' judgment.

II
Congress enacted 18 U. S. C. § 844(i) as part of Title XI of the Organized Crime Control Act of 1970, Pub. L. 91-452, § 1102, 84 Stat. 952, "because of the need `to curb the use, transportation, and possession of explosives.' " Russell v. *853 United States, 471 U. S. 858, 860, n. 5 (1985) (citation omitted). The word "fire," which did not appear in § 844(i) as originally composed, was introduced by statutory amendment in 1982.[4] As now worded, § 844(i) (1994 ed., Supp. IV) reads in relevant part:
"Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce shall be imprisoned for not less than 5 years and not more than 20 years, fined under this title, or both . . . ." We previously construed § 844(i) in Russell v. United States, 471 U. S. 858 (1985), and there held that § 844(i) applies to a building "used as rental property," ibid. The petitioner-defendant in Russell had unsuccessfully attempted to set fire to a two-unit apartment building he owned. He earned rental income from the property and "treated it as business property for tax purposes." Id., at 859. Our decision stated as the dispositive fact: "Petitioner was renting his apartment building to tenants at the time he attempted to destroy it by fire." Id., at 862. It followed from that fact, the Russell opinion concluded, that "[t]he property was . . . being used in an activity affecting commerce within the meaning of § 844(i)." Ibid.[5]
*854 We now confront a question that was not before the Court in Russell: Does § 844(i) cover property occupied and used by its owner not for any commercial venture, but as a private residence. Is such a dwelling place, in the words of § 844(i), "used in . . . any activity affecting . . . commerce"?
In support of its argument that § 844(i) reaches the arson of an owner-occupied private residence, the Government relies principally on the breadth of the statutory term "affecting . . . commerce," see Brief for United States 10, 16-17, words that, when unqualified, signal Congress' intent to invoke its full authority under the Commerce Clause. But § 844(i) contains the qualifying words "used in" a commerce-affecting activity. The key word is "used." "Congress did not define the crime described in § 844(i) as the explosion of a building whose damage or destruction might affect interstate commerce . . . ." United States v. Mennuti, 639 F. 2d 107, 110 (CA2 1981) (Friendly, J.).[6] Congress "require[d] that the damaged or destroyed property must itself have been used in commerce or in an activity affecting commerce." Ibid. The proper inquiry, we agree, "is into the function of the building itself, and then a determination of whether that function affects interstate commerce." *855 United States v. Ryan, 9 F. 3d 660, 675 (CA8 1993) (Arnold, C. J., concurring in part and dissenting in part).[7]
The Government urges that the Fort Wayne, Indiana, residence into which Jones tossed a Molotov cocktail was constantly "used" in at least three "activit[ies] affecting commerce." First, the homeowner "used" the dwelling as collateral to obtain and secure a mortgage from an Oklahoma lender; the lender, in turn, "used" the property as security for the home loan. Second, the homeowner "used" the residence to obtain a casualty insurance policy from a Wisconsin insurer. That policy, the Government points out, safeguarded the interests of the homeowner and the mortgagee. Third, the homeowner "used" the dwelling to receive natural gas from sources outside Indiana. See Brief for United States 19-23.
The Government correctly observes that § 844(i) excludes no particular type of building (it covers "any building"); the provision does, however, require that the building be "used" in an activity affecting commerce. That qualification is most sensibly read to mean active employment for commercial purposes, and not merely a passive, passing, or past connection to commerce. Although "variously defined," the word "use," in legislation as in conversation, ordinarily signifies "active employment." Bailey v. United States, 516 U. S. 137, 143, 145 (1995); see also Asgrow Seed Co. v. Winterboer, 513 U. S. 179, 187 (1995) ("When terms used in a statute are undefined, we give them their ordinary meaning.").
*856 It surely is not the common perception that a private, owner-occupied residence is "used" in the "activity" of receiving natural gas, a mortgage, or an insurance policy. Cf. Bailey, 516 U. S., at 145 (interpreting the word "use," as it appears in 18 U. S. C. § 924(c)(1), to mean active employment of a firearm and rejecting the Government's argument that a gun is "used" whenever its presence "protect[s] drugs" or "embolden[s]" a drug dealer). The Government does not allege that the Indiana residence involved in this case served as a home office or the locus of any commercial undertaking. The home's only "active employment," so far as the record reveals, was for the everyday living of Jones's cousin and his family.
Our decision in Russell does not warrant a less "use"-centered reading of § 844(i). In that case, which involved the arson of property rented out by its owner, see supra, at 853, the Court referred to the recognized distinction between legislation limited to activities "in commerce" and legislation invoking Congress' full power over activity substantially "affecting . . . commerce." 471 U. S., at 859 860, and n. 4. The Russell opinion went on to observe, however, that "[b]y its terms," § 844(i) applies only to "property that is `used' in an `activity' that affects commerce." Id., at 862. "The rental of real estate," the Court then stated, "is unquestionably such an activity." Ibid.[8] Here, as earlier emphasized, the owner used the property as his home, the center of his family life. He did not use the residence in any trade or business.
*857 Were we to adopt the Government's expansive interpretation of § 844(i), hardly a building in the land would fall outside the federal statute's domain. Practically every building in our cities, towns, and rural areas is constructed with supplies that have moved in interstate commerce, served by utilities that have an interstate connection, financed or insured by enterprises that do business across state lines, or bears some other trace of interstate commerce. See, e. g., FERC v. Mississippi, 456 U. S. 742, 757 (1982) (observing that electric energy is consumed "in virtually every home" and that "[n]o State relies solely on its own resources" to meet its inhabitants' demand for the product). If such connections sufficed to trigger § 844(i), the statute's limiting language, "used in" any commerce-affecting activity, would have no office. See United States v. Monholland, 607 F. 2d 1311, 1316 (CA10 1979) (finding in § 844(i) no indication that Congress intended to include "everybody and everything"). "Judges should hesitate . . . to treat statutory terms in any setting [as surplusage], and resistance should be heightened when the words describe an element of a criminal offense." Ratzlaf v. United States, 510 U. S. 135, 140-141 (1994); accord, Bailey, 516 U. S., at 145.

III
Our reading of § 844(i) is in harmony with the guiding principle that "where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter." United States ex rel. Attorney General v. Delaware & Hudson Co., 213 U. S. 366, 408 (1909), quoted in Jones v. United States, 526 U. S. 227, 239 (1999); see also DeBartolo, 485 U. S., at 575; Ashwander v. TVA, 297 U. S. 288, 348 (1936) (Brandeis, J., concurring). In Lopez, this Court invalidated the Gun-Free School Zones Act, former 18 U. S. C. § 922(q) (1988 ed., Supp. V), which made it a federal crime to possess a firearm within *858 1,000 feet of a school. The defendant in that case, a 12thgrade student, had been convicted for knowingly possessing a concealed handgun and bullets at his San Antonio, Texas, high school, in violation of the federal Act. Holding that the Act exceeded Congress' power to regulate commerce, the Court stressed that the area was one of traditional state concern, see 514 U. S., at 561, n. 3, 567; id., at 577 (Kennedy, J., concurring), and that the legislation aimed at activity in which "neither the actors nor their conduct has a commercial character," id., at 580 (Kennedy, J., concurring); id., at 560 562 (opinion of the Court).
Given the concerns brought to the fore in Lopez, it is appropriate to avoid the constitutional question that would arise were we to read § 844(i) to render the "traditionally local criminal conduct" in which petitioner Jones engaged "a matter for federal enforcement." United States v. Bass, 404 U. S. 336, 350 (1971). Our comprehension of § 844(i) is additionally reinforced by other interpretive guides. We have instructed that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity," Rewis v. United States, 401 U. S. 808, 812 (1971), and that "when choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite," United States v. Universal C. I. T. Credit Corp., 344 U. S. 218, 221-222 (1952). We have cautioned, as well, that "unless Congress conveys its purpose clearly, it will not be deemed to have significantly changed the federal-state balance" in the prosecution of crimes. Bass, 404 U. S., at 349. To read § 844(i) as encompassing the arson of an owneroccupied private home would effect such a change, for arson is a paradigmatic common-law state crime. See generally Poulos, The Metamorphosis of the Law of Arson, 51 Mo. L. Rev. 295 (1986).

*859 IV
We conclude that § 844(i) is not soundly read to make virtually every arson in the country a federal offense. We hold that the provision covers only property currently used in commerce or in an activity affecting commerce. The home owned and occupied by petitioner Jones's cousin was not so usedit was a dwelling place used for everyday family living. As we read § 844(i), Congress left cases of this genre to the law enforcement authorities of the States.
Our holding that § 844(i) does not cover the arson of an owner-occupied dwelling means that Jones's § 844(i) conviction must be vacated. Accordingly, the judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

It is so ordered. Justice Stevens, with whom Justice Thomas joins, concurring.
Part II of the Court's opinion convincingly explains why its construction of 18 U. S. C. § 844(i) better fits the text and context of the provision than the Government's expansive reading. It also seems appropriate, however, to emphasize the kinship between our well-established presumption against federal pre-emption of state law, see Ray v. Atlantic Richfield Co., 435 U. S. 151, 157 (1978), and our reluctance to "believe Congress intended to authorize federal intervention in local law enforcement in a marginal case such as this." United States v. Altobella, 442 F. 2d 310, 316 (CA7 1971). The fact that petitioner received a sentence of 35 years in prison when the maximum penalty for the comparable state offense was only 10 years, Ind. Code §§ 35-43-11, 35-50 2-5 (1993), illustrates how a criminal law like this may effectively displace a policy choice made by the State. Even when Congress has undoubted power to pre-empt local law, *860 we have wisely decided that "unless Congress conveys its purpose clearly, it will not be deemed to have significantly changed the federal-state balance." United States v. Bass, 404 U. S. 336, 349 (1971). For this reason, I reiterate my firm belief that we should interpret narrowly federal criminal laws that overlap with state authority unless congressional intention to assert its jurisdiction is plain.[*]
Justice Thomas, with whom Justice Scalia joins, concurring.
In joining the Court's opinion, I express no view on the question whether the federal arson statute, 18 U. S. C. § 844(i) (1994 ed., Supp. IV), as there construed, is constitutional in its application to all buildings used for commercial activities.
NOTES
[*] Briefs of amici curiae urging reversal were filed for the Cato Institute by Ronald D. Rotunda; for the Center for the Original Intent of the Constitution by Michael P. Farris; for the National Association of Criminal Defense Lawyers et al. by Jeffrey J. Pokorak and Barbara Bergman; for the Pacific Legal Foundation by Anne M. Hayes and M. Reed Hopper; and for Dale Lynn Ryan by John G. Roberts, Jr., and Gregory G. Garre. 
[1] The question on which we granted review refers solely to Jones's § 844(i)conviction. See infra, at 852. We therefore do not address his § 924(c) and § 5861(f) convictions.
[2] Compare United States v.Gaydos, 108 F. 3d 505 (CA3 1997) (vacant, uninhabitable house formerly rented not covered by statute), United States v. Denalli, 73 F. 3d 328 (CA11) (owner-occupied residence not covered), modified on other grounds, 90 F. 3d 444 (1996) (per curiam), United States v. Mennuti, 639 F. 2d 107 (CA2 1981) (same), with United States v. Ryan, 41 F. 3d 361 (CA8 1994) (en banc) (vacant former commercial property covered), cert. denied, 514 U. S. 1082 (1995), United States v. Ramey, 24 F. 3d 602 (CA4 1994) (owner-occupied residence covered), cert. denied, 514 U. S. 1103 (1995), and United States v. Stillwell, 900 F. 2d 1104 (CA7) (same), cert. denied, 498 U. S. 838 (1990).
[3] Compare United States v.Pappadopoulos, 64 F. 3d 522 (CA9 1995) (application to owner-occupied residence unconstitutional), with 178 F. 3d 479 (CA7 1999) (decision below), and Ramey, 24 F. 3d, at 602 (application constitutional).
[4] See Pub. L. 97-298, § 2(c), 96 Stat. 1319 (amending § 844(i) to insert the words "fire or" before the words "an explosive"). The House Report accompanying the 1982 legislation explained that the original measure, which was confined to damage caused by "an explosive," had resulted in problems of practical application. H. R. Rep. No. 678, 97th Cong., 2d Sess., 2 (1982). In particular, the Report noted a Circuit conflict on the question whether the measure covered use of gasoline or other flammable liquids to ignite a fire. Id., at 2, and nn. 5-6.
[5] We noted in Russell that the original version of the bill that became § 844(i) applied to destruction, by means of explosives, of property used "`for business purposes.' " 471 U. S., at 860, n. 5. After some House members indicated that they thought the provision should apply to the bombings of schools, police stations, and places of worship, the words "for business purposes" were omitted. Id., at 860-861. The House Report accompanying the final bill, we further noted in Russell, described § 844(i) as "`a very broad provision covering substantially all business property.' " Id., at 861, and n. 8 (citing H. R. Rep. No. 91-1549, pp. 69-70 (1970)).
[6] The defendants in Mennuti destroyed two buildings. One was the residence of the owner and her family, the other was a rental property. See 639 F. 2d, at 108-109, n. 1. The Second Circuit affirmed the District Court's dismissal of the entire indictment. Our decision in Russell v. United States, 471 U. S. 858 (1985), supersedes Mennuti with respect to the building held for rental. Regarding the family residence, we find Mennuti `s reasoning persuasive.
[7] In Ryan, Chief Judge Arnold dissented from a panel decision holding that the arson of a permanently closed fitness center fell within § 844(i)'s prohibition. The panel majority considered adequate either of two interstate commerce connections: the building was owned and leased by out-ofstate parties, and received natural gas from across state borders. The panel added, however, that it would not extend the decision "to property which is purely private in nature, such as a privately owned home, used solely for residential purposes." 9 F. 3d, at 666-667. Sitting en banc, the Eighth Circuit affirmed the panel's judgment. See United States v. Ryan, 41 F. 3d 361 (1994), cert. denied, 514 U. S. 1082 (1995).
[8] Notably, the Court in Russell did not rest its holding on the expansive interpretation advanced by the Government both in Russell and in this case. Compare Brief for United States in Russell v. United States, O. T. 1984, No. 435, p. 15 ("Petitioner used his building on South Union Street in an activity affecting interstate commerce by heating it with gas that moved interstate."), with Russell, 471 U. S., at 862 (focusing instead on fact that "[t]he rental of real estate is unquestionably . . . an activity" affecting commerce).
[*] See Landreth Timber Co. v. Landreth, 471 U. S. 681, 700, n. 2 (1985) (Stevens, J., dissenting); Bennett v. New Jersey, 470 U. S. 632, 654-655, n. 16 (1985) (Stevens, J.,dissenting); Garcia v. United States, 469 U. S. 70, 89-90 (1984) (Stevens, J., dissenting); Bell v. United States, 462 U. S. 356, 363 (1983) (Stevens, J., dissenting); McElroy v. United States, 455 U. S. 642, 675 (1982) (Stevens, J., dissenting).