

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-24-2002

# USA v. Wynne

Precedential or Non-Precedential:

Docket 1-1679

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"USA v. Wynne" (2002). *2002 Decisions*. Paper 36.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/36

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 01-1679


UNITED STATES OF AMERICA,

v.

GEMALLE L. WYNNE,

Appellant.


On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 00-cr-00193)
District Judge: Honorable Stephen M. Orlofsky


Submitted under Third Circuit LAR 34.1(a)
December 11, 2001

Before: BARRY and ALDISERT, Circuit Judges, and FULLAM, District Judge.

(Filed  January 24, 2002)


MEMORANDUM OPINION OF THE COURT


ALDISERT, Circuit Judge.
     We discuss two questions in this appeal by Gemalle L. Wynne from a conviction
and sentence.
     Wynne first contends that the felon-in-possession statute is unconstitutional
because the conduct it proscribes--the intrastate possession of a firearm--does not have a
substantial effect upon interstate commerce, and thus does not constitute a valid exercise
of Congressional authority under the Commerce Clause.  Specifically, Wynne contends
that although we upheld the constitutionality of 18 U.S.C.  922(g)(1) as a proper
exercise of Congressional regulatory power under the Commerce Clause in United States

v. Gateward, 84 F.3d 670 (3d Cir. 1996), that holding must be reconsidered in the wake of the Court's decisions in United States v. Morrison, 529 U.S. 598 (2000), and Jones v. United States, 529 U.S. 848 (2000).  We hold that this argument is now totally foreclosed by our recent decision in United States v. Singletary, 268 F.3d 196 (3d Cir. 2001), in which we rejected the identical contention.

His next contention hinges on the teachings of Florida v. J.L., 529 U.S. 266 (2000).  In J.L., the Court held that an anonymous tip that the defendant was carrying a gun was insufficient to justify a stop and frisk conducted by a police officer, and thus the district court erred in denying his motion to suppress.

Wynne argues that neither the anonymous telephone call to the 911 operator reporting the gunshots emanating from the area of Francine's bar, nor the shouted remark at the scene of the arrest that he had a gun, established reasonable suspicion to believe that Wynne was engaged in criminal conduct.

On its part, the government argues that the totality of circumstances confronting the police established reasonable suspicion.  The government refers specifically to the following circumstances:  1) Wynne had fled, though unprovoked, in response to the arrival of the police; 2) he had fled from a location at which gunshots had been fired moments earlier; 3) he was in a high crime area where guns were frequently fired; 4) he had refused repeated police commands to stop and show his hands; and finally 5) a bystander shouted in the presence of both police and Appellant that Appellant had a gun.

We are satisfied that the facts here bear a closer resemblance to those in Illinois v. Wardlow, 528 U.S. 119 (2000) than to those in Florida v J.L.  In discussing the requirements of Terry v. Ohio, 392 U.S. 1 (1968), the Wardlow Court explained:

[W]e have previously noted the fact that the stop occurred in a "high crime area" among the relevant contextual considerations in a Terry analysis . . .

In this case, moreover, it was not merely respondent's presence in an area of heavy narcotics trafficking that aroused the officers' suspicion, but his

unprovoked flight upon noticing the police.  Our cases have also recognized

that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion . . . Headlong flight--wherever it occurs--is the consummate act of evasion:  It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such.  In reviewing the propriety of an officer's conduct, courts do not have available empirical studies dealing with inferences drawn from suspicious behavior, and we cannot reasonably demand scientific certainty from judges or law enforcement officers where none exists.  Thus, the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior . . . We conclude [the officer] was justified in suspecting that Wardlow was involved in criminal activity, and, therefore, in investigating further.

Wardlow, 528 U.S. at 124-125.

The district court here determined that it was "undisputed that shots were fired and it is undisputed that shots are frequently fired in the City of Camden, and so the police were obviously responding to a shots fired call in a high crime area." App. at 193. Accordingly, we reject this argument as well.

\* \* \* \* \*

We have considered all of the arguments advanced by the parties and conclude that no further discussion is necessary.  The judgment of the district court will be affirmed.

TO THE CLERK:
Please file the foregoing opinion.

/s/ Ruggero J. Aldisert
Circuit Judge