HILL, Circuit Judge,
dissenting, in which BIRCH, Circuit Judge, joins:
Under the authority of the Commerce Clause, Congress may regulate the channels and instrumentalities of interstate commerce, as well as certain activities affecting commerce. United States v. Lopez, 514 U.S. 549, 558-59, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). The instrumen-talities of interstate commerce are those “persons or things” that travel in interstate commerce. Id. The channels of interstate commerce include all modes of interstate or foreign movement of commerce. Id._ Thus, the instrumentalities and channels of interstate commerce encompass the concept of movement of commerce across state lines, and there has never been any serious question about Congress’ authority to regulate and protect them. Id.
Congress authority to regulate intrastate activities was not always recognized by the Supreme Court. United States v. E.C. Knight Co., 156 U.S. 1, 12, 15 S.Ct. 249, 39 L.Ed. 325 (1895) (“Commerce succeeds to manufacture and is not part of it”). Later, the Court recognized the necessity to protect interstate commerce from the burdens and obstructions that might be imposed by intrastate activities that have a “close and substantial relation” to it. NLRB v. Jones & Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893 (1937). Under such circumstances, the Court held, the regulation of intrastate activities that “affect” interstate commerce is within Congress’ commerce power. Id. at 37, 57 S.Ct. 615. Even purely local activities, such as the wheat grown for personal consumption in Wickard v. Filburn, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942), although not, in interstate commerce, may be regulated if the absence of regulation would undercut a larger regulatory scheme affecting interstate commerce. Lopez, 514 U.S. at 561, 115 S.Ct. 1624.
The effect on interstate commerce of such an intrastate activity, however, must be substantial in order for the commerce power to reach it. Id. See also United States v. Robertson, 514 U.S. 669, 671, 115 S.Ct. 1732, 131 L.Ed.2d 714 (1995) (“[t]he ‘affecting commerce’ test ... define[s] the extent of Congress’s power over purely intra state commercial activities that nonetheless have substantial inter state effects”) (emphasis in original). Thus, Congress’ power to regulate intrastate activities is more limited than is its power to regulate the instrumentalities and channels of interstate commerce. Whereas Congress may regulate any instrumentali *1254 ty or channel of interstate commerce, the Constitution permits Congress to regulate only those intrastate activities that have a substantial effect on interstate commerce.
Furthermore, such regulation of intrastate activities has always been limited to economic activities. In United States v. Morrison, 529 U.S. 598, 613, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000), the Court observed:
Thus far in our Nation’s history our cases have upheld Commerce Clause regulation of intrastate activity only where that activity is economic in nature .... A review of Commerce Clause case law demonstrates that in those cases where we have sustained federal regulation of intrastate activity based upon the activity’s substantial effects on interstate commerce, the activity in question has been some sort of economic endeavor.
(emphasis added) (citing Lopez, 514 U.S. at 559-60, 115 S.Ct. 1624). Thus, Congress’ power to regulate intrastate activities has always been limited to economic activities that have a substantial effect on interstate commerce.
To hold otherwise, the Court has observed, would “convert congressional authority under the Commerce Clause to a general police power of the sort retained by the States.” Lopez, 514 U.S. at 567, 115 S.Ct. 1624. This the Constitution does not permit. The Court has long recognized that:
The Constitution requires a distinction between what is truly national and what is truly local. In recognizing this fact we preserve one of the few principles that has been consistent since the [Commerce] Clause was adopted. The regulation and punishment of intrastate violence that is not directed at the in-strumentalities, channels, or goods involved in interstate commerce has always been the province of the States. Indeed, we can think of no better example of the police power, which the Founders denied the National government and reposed in the States, than the suppression of violent crime and vindication of its victims.
Morrison, 529 U.S. at 617, 120 S.Ct. 1740 (internal citations and quotations omitted). The Constitution withholds from Congress a general police power, and the Court has always “rejected readings of the Commerce Clause and the scope of federal power that would permit Congress to exercise [one].” Lopez, 514 U.S. at 596-97, 115 S.Ct. 1624 (Thomas, J., concurring).
Congress has, nonetheless, frequently sought to exercise such a general police power. Lacking authority to punish the crime itself, Congress used its power to keep the channels and the instrumentalities of interstate commerce safe to prohibit travel in interstate commerce to commit the crime.[1] But, in these statutes, the travel is the offense, not the common-law crime itself.
*1255 Section 247, however, is typical of a number of more recent statutes that seek to use the commerce power “to cast [a] remedy over a wider, and more purely intrastate, body of violent crime.” Morrison, at 613, 120 S.Ct. 1740 (emphasis added). These statutes prohibit the activity of the violent crime itself, making it an offense against the United States to carry a gun in a school zone, commit arson, batter a spouse, or burn a church. See 18 U.S.C. §§ 922(q)(l)(A), 844, 13981, and 247. The Supreme Court has uniformly rejected these attempts to transform the commerce power into a general police power over intrastate crime.
In Lopez, the Court reviewed a congressional prohibition on possession of a firearm in a school zone. The Court held that because the knowing possession of a firearm in a school zone does not substantially affect interstate commerce, the Congress exceeded its authority under the Commerce Clause in making it a federal crime. Id. at 551, 115 S.Ct. 1624.
Similarly, in Morrison, the Court examined Congress’ attempt to provide a federal remedy for domestic violence. The Court first noted that domestic violence is not an economic activity. 529 U.S. at 610, 120 S.Ct. 1740. Stating that “a fair reading of Lopez shows that the non-economic, criminal nature of the conduct at issue was central to our decision [that the statute was unconstitutional] in that case,” the Court held that Congress’ attempt to regulate the non-economic, purely local crime of domestic violence exceeded its authority under the Commerce Clause. Id.[2]
In Jones v. United States, 529 U.S. 848, 120 S.Ct. 1904, 146 L.Ed.2d 902 (2000), the Court was called upon .to interpret the federal omnibus arson statute, 18 U.S.C. § 844, which extends federal jurisdiction over the burning of any real property “used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce.” The government, seeking to prosecute the arson of an owner-occupied, private residence, argued that Congress’ use of the words “affecting” interstate commerce signaled Congress’ intent to exercise its full authority under the Commerce Clause. The Court, however, rejected the notion that the mere recitation of such words rendered the statute immune from judicial review, and proceeded to examine the quality of the connections between the residence and interstate commerce — the receipt of natural gas, a mortgage and an insurance policy from out-of-state. The Court rejected these connections as too de minimis, holding that § 844 “does not reach an owner-occupied residence that is not used for any commercial purpose.” Id. at 857, 120 S.Ct. 1904. The Court concluded that:
“[g]iven the concerns brought to the fore in Lopez, it is appropriate to avoid the constitutional question that would arise were we to read § 844(i) to render the ‘traditionally local criminal conduct’ in which petitioner Jones engaged ‘a matter for federal enforcement.’ ” ... Section 844 is not soundly read to make virtually every arson in the country a federal offense.
Id. at 858, 120 S.Ct. 1904.[3]
Section 247 also seeks to regulate a common-law state crime — church burning. *1256 Therefore, I believe our inquiry into Congress’ attempt to regulate it should proceed exactly as did the Supreme Court’s in Lopez, Morrison, and Jones. We should examine the intrastate, non-eeonomic activity of church burning to determine whether that activity may be regulated because it substantially affects interstate commerce.[4]
The en banc court’s analysis of § 247, however, does not proceed in this way. Its analysis focuses not on the authority of Congress to regulate the intrastate activity of church burning, but rather on the meaning of the jurisdictional hook requiring that the offense be “in or affect” interstate commerce. The majority asserts that by criminalizing the church arson that is “in” interstate commerce, Congress intended to invoke its “fullest authority” under the Commerce Clause, including its power to protect the channels and instru-mentalities of commerce. Therefore, the majority concludes, § 247 criminalizes the use of the channels and instrumentalities of commerce in connection with a church arson. Thus, church arson is a federal crime if the church burner travels in interstate commerce in order to burn a church.[5]
I find nothing to support this interpretation of § 247. The statute defines the offense as the arson, not travel to commit the arson, and the use of the word “in” does not change that. The statute is Congress’ attempt to punish the intrastate activity of church burning, not the use of the interstate highway to reach the church.
Nor can the recitation of “in or affecting” create federal jurisdiction where none is constitutionally permitted. Merely because Congress chooses to prohibit the church arson that is “in” interstate commerce does not mean that there is such a crime.[6] Whether church burning substantially “affects” interstate commerce is a highly problematic issue the majority does not even reach.[7]
I do agree, however, with the en banc court’s conclusion that Congress intended to invoke its full power under the Commerce Clause in prohibiting church arson. In attempting to regulate a purely local activity, such as Wickard’s wheat or church arson, Congress reaches the outer limits of its commerce power and invokes its full authority not because it may, but because it must. “In or affecting,” however, is not a shibboleth that, having been correctly pronounced, opens the door to federal prosecution. As Lopez, Morrison, and Jones have made clear, no jurisdictional hook, nor any mantric invocation by Congress of its “fullest authority under the Commerce Clause” can establish federal *1257 jurisdiction over an intrastate activity that judicial review determines does not have the constitutionally required substantial effect on interstate commerce.[8]
Thus, I do not agree with the conclusion of the en banc court that § 247’s jurisdictional language transforms it from an attempt by Congress to push its commerce power to the limit by punishing the purely local and non-economic activity of church burning into an innocuous regulation of the channels or instrumentalities of interstate commerce by prohibiting the travel to burn the church. By collapsing the three Lopez categories of permissible regulation of commerce into one, all-purpose category that permits regulation of even purely local non-economic activities — such as violent crime — if someone or something associated with the activity moves in the channels or utilizes the instrumentalities of interstate commerce prior to the activity, the en banc court obliterates the Supreme Court’s careful distinction between Congress’ plenary power over the channels and instrumentalities of commerce, and Congress’ much more limited power over intrastate economic activities, which may be regulated only if the local activity itself has a substantial effect on interstate commerce.
Furthermore, interpreting “in or affects” to permit Congress to make the local non-economic activity of church burning a federal crime merely because the arsonist crosses state lines to commit the crime, permits too much. I cannot think of any local activity that Congress could not regulate, nor any crime that Congress could not federalize under such an expansive interpretation of the commerce power. Cf. Morrison, 529 U.S. at 615, 120 S.Ct. 1740 (“Indeed, if Congress may regulate gender-motivated violence, it would be able to regulate murder or any other type of violence since gender-motivated violence is a subset of all violent crime, is certain to have lesser economic impacts than the larger class of which it is a part”).[9] Such an expansive interpretation would render null and void the Court’s decisions in Lopez, Morrison, and Jones.
The underlying principles of federalism require that the reach of the commerce power over intrastate activities be limited to those economic activities that are in or, if purely local, substantially affect interstate commerce. Without enforcing the limits imposed by the Constitution, according to the Court in Morrison, “the concern that we expressed in Lopez that Congress might use the Commerce Clause to completely obliterate the Constitution’s distinction between national and local authority seems well founded.” Id. at 615, 120 S.Ct. 1740.
The view that the distinction between the national and the truly local must be maintained is not a unanimous one in either the Congress or the Court.[10] The Morrison majority remarked that the dissent’s “remarkable theory [is] that the *1258 commerce power is without judicially enforceable boundaries.” 529 U.S. at 608 n. 3, 120 S.Ct. 1740. This theory, although rejected thus far in our constitutional history, remains a seductive one when Congress, bent on doing good, does violence to the principles of federalism that have supported our republic for over two hundred years.
Ballinger is an evil doer and the evil that he has done is reprehensible. Because he has done these evil things, he is locked up and he should remain so. But to keep him there, I fear that today we step over the historical line so carefully drawn by the Court.

. There are numerous federal statutes which do, explicitly, criminalize travel in interstate commerce in order to commit a traditional common-law crime. See, e.g., 18 U.S.C. § 43 (traveling to engage in animal terrorism); 18 U.S.C. § 228 (traveling to avoid paying child support); 18 U.S.C. § 1073 (flight to avoid prosecution); 19 U.S.C. § 1074 (flight to avoid prosecution for destroying property); 18 U.S.C. § 1231 (interstate travel to engage in strikebreaking); 18 U.S.C. § 1958 (traveling to engage in murder for hire); 18 U.S.C. § 2101 (traveling to cause a riot); 18 U.S.C. § 2118 (traveling to engage in robbery involving controlled substances); 18 U.S.C. § 2261 (traveling to commit interstate domestic violence); 18 U.S.C. § 2261A (traveling to commit interstate stalking); 18 U.S.C. § 2262 (traveling to violate domestic protective order); 18 U.S.C. § 2423 (interstate travel to provide minors for sex). These statutes regulate crime by focusing on the criminal's movement in the channels of interstate commerce.

. The Court approved sub silentio a different provision of the Violence Against Women Act when it noted that Section 40221(a) of the Act, which prohibits travel to commit spousal abuse, has been uniformly upheld by the Courts of Appeals as an appropriate exercise of Congress’ Commerce Clause authority to protect the use of the channels of interstate commerce. 529 U.S. at 613 n. 5, 120 S.Ct. 1740.

. In construing the statute not to reach the arson of a purely private residence, the court avoided Jones' constitutional claim that crimi *1256 nalization of such an arson is beyond the commerce power of Congress. 529 U.S. at 852, 120 S.Ct. 1904.

. Recently a panel of this court approached yet another congressional attempt to federalize a state crime — intrastate possession of child pornography — in exactly this way, holding that it too exceeded Congress' authority because the connection between the intrastate possession of pornography and interstate commerce was too attenuated to justify federal jurisdiction. United States v. Maxwell, 386 F.3d 1042 (11th Cir.2004).

. Since the majority clearly requires such travel or the use of the instrumentalities for federal jurisdiction to attach, the statute will not apply to the purely local arsonist who burns the church down the street, as Congress clearly intended by its 1996 amendment deleting the travel requirement.

. Similarly, ''[s]imply because Congress may conclude that a particular activity substantially affects interstate commerce does not necessarily make it so.” Lopez, 514 U.S. at 557 n. 2, 115 S.Ct. 1624.

. In the vacated opinion in this case, the panel held that Ballinger's crimes did not substantially affect interstate commerce. 312 F.3d 1264 (11th Cir.2002).

. The Court observed in Morrison, in response to the dissent, that "[ujnder our written Constitution, however, the limitation of congressional authority is not solely a matter of legislative grace.” 529 U.S. at 616, 120 S.Ct. 1740.

. Of course, the Congress may prohibit travel to commit the offense of church burning as it has done in the other statutes mentioned above in n. 1. Then, however, the offense prohibited is the travel.

.Or, for that matter, in the Executive. President Theodore Roosevelt once remarked that "little permanent good can be done by any party which ... fails to regard the State, like the county or the municipality, as merely a convenient unit for local self-government.” Theodore Roosevelt, An Autobiography 351 (Charles Scribner's Sons 1924) (1913).