BOUDIN, Chief Judge,
concurring.
Although several important issues are raised on these appeals, the one of greatest continuing importance concerns RICO’s commerce requirement, see 18 U.S.C. § 1962(c) (2000), and the constitutional challenge by the defendants based on United States v. Lopez, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), and United States v. Morrison, 529 U.S. 598, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000)—the duo itself having been distinguished more recently by Gonzales v. Raich, 545 U.S. 1, 125 S.Ct. 2195, 162 L.Ed.2d 1 (2005).[10]
RICO reaches an enterprise that “af-feet[s]” interstate commerce, 18 U.S.C. § 1962(c), a term of art usually signifying Congress’s intent to regulate to the limit of its Commerce Clause powers. Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 115, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001). In our case, the evidence showed the gang’s regular use of guns that had moved in interstate commerce, as well as one trip by a gang member across state lines to procure such weapons. The guns were not peripheral; they related directly and centrally to the gang’s activities. This nexus is enough to satisfy the Commerce *52 Clause. That the acquisition of such weaponry swells, rather than impedes, interstate commerce long ago ceased to matter, United States v. Darby, 312 U.S. 100, 113, 61 S.Ct. 451, 85 L.Ed. 609 (1941).
The commerce link in our case is at least as strong and arguably stronger than that of a prior felon who acquires, in some local “street” transaction, a gun that happened to be made in another state. The act of a felon receiving or possessing such a gun (or, indeed, even a single bullet) has for many years been a federal criminal offense, see 18 U.S.C. § 922(g)(1), based on the prior movement of the gun in interstate commerce. Scarborough v. United States, 431 U.S. 563, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977). Here, multiple weapons and their use as part of the criminal enterprise were amply proved. Given Scarborough, our own case appears a forti-ori.
Some courts in upholding the felon-in-possession statute assert that it regulates an “instrumentality” of commerce, namely the gun. E.g., United States v. Dorris, 236 F.3d 582, 586 (10th Cir.2000). But in truth the statute criminalizes conduct — possession or receipt of a gun by a felon — and the gun’s provenance provides a sufficient nexus to commerce to permit federal regulation of that conduct. The offending conduct here is the use of guns to kill people as part of a criminal enterprise; and the interstate origins of the guns permit Congress to regulate that conduct. If Congress can regulate the mere possession of a gun because the gun at one time traveled in interstate commerce, surely it can also regulate an enterprise that uses such guns to kill.
There are other analogous statutes. The federal car-jacking statute, 18 U.S.C. § 2119 (2000), makes murder and lesser violence into federal crimes simply because the vehicle once moved in interstate commerce, and it has repeatedly been upheld. E.g., United States v. Cobb, 144 F.3d 319, 320-21 (4th Cir.1998). And courts regularly uphold wire and mail fraud convictions because a single call or mailing, playing an incidental role in the scheme, creates a link to an instrumentality of interstate commerce, e.g., Schmuck v. United States, 489 U.S. 705, 710-715, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989); Pereira v. United States, 347 U.S. 1, 8, 74 S.Ct. 358, 98 L.Ed. 435 (1954). In fact, the call or mailing may itself be intrastate so the link is the use of facilities that also serve interstate customers, e.g., United States v. Gil, 297 F.3d 93, 100 (2d Cir.2002).
Lopez and Morrison concerned statutes that did not require any jury finding that the conduct in the particular case used facilities of interstate commerce or affected such commerce. Lopez, 514 U.S. at 561, 115 S.Ct. 1624; Morrison, 529 U.S. at 613, 120 S.Ct. 1740. The legality of each statute in these two cases depended on imputing (in Lopez) or upholding (in Morrison) a generalized Congressional determination that a class of primarily local activities taken together had some cumulative effect on commerce, even if individual effects were too small to count. Lopez, 514 U.S. at 563, 115 S.Ct. 1624; Morrison, 529 U.S. at 615, 120 S.Ct. 1740.
The cumulative impact theory had been well established in commerce clause cases since Wickard v. Filburn, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122 (1942). In Lopez and Morrison, the Supreme Court restricted the theory to cases of economic activity. Lopez, 514 U.S. at 561, 115 S.Ct. 1624; Morrison, 529 U.S. at 611, 120 S.Ct. 1740. But the restriction, which we must assume continues to be good law, has nothing to do with a case where the statute requires and the evidence shows that the defendants themselves had the requisite effect on *53 commerce — here by the purchase and possession of weaponry.
Raich is yet a different kind of problem. Marijuana cultivation taken as a whole is a commercial activity affecting interstate commerce; but the Supreme Court upheld the criminal ban even where marijuana is grown for personal non-economic use and consumed in-state. Its rationale was that Congress could reach cases of this kind because, given the practical difficulties of distinguishing, a ban on such intrastate, noncommercial production was an “essential part of the larger regulatory scheme.” Raich, 545 U.S. at 27, 125 S.Ct. 2195.
The present case is easier for the government than was Raich. To repeat, the RICO statute requires that the particular enterprise itself affect interstate commerce and a jury, supported by evidence, determined that the enterprise in this case did affect such commerce. The guns traveled in interstate commerce; so too did one of the enterprise’s gun purchasers. This is sufficient to pass constitutional muster. Cf. Scarborough, 431 U.S. 563, 97 S.Ct. 1963. However much Raich may or may not affect Lopez and Morrison, the convictions in this case satisfy established precedent.
Congress’ use of the Commerce Clause to reach local crimes or criminals plausibly linked in the individual case to interstate commerce may or may not be good federalism policy but its legality is too well established to be revisited by the lower federal courts. Conceivably, the link in a particular case may be too slight or faint; every murder is of someone whose next meal might otherwise have come from a large supermarket chain purchasing its products interstate. See Lopez, 514 U.S. at 564, 115 S.Ct. 1624. But the arsenal of guns in this case is not a slight or faint connection and is sufficient to sustain federal jurisdiction under existing Supreme Court precedent.

. Jones v. United States, 529 U.S. 848, 120 S.Ct. 1904, 146 L.Ed.2d 902 (2000), is also cited along with the Lopez-Morrison duo, but Jones was a statutory interpretation case and did not directly engage the scope of Congress's commerce power.