**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 11-4121**

———————

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

AJMAL A. AMAN,

        Defendant - Appellant.

———————

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  T. S. Ellis, III, Senior District Judge.  (1:10-cr-00236-TSE-1)

———————

Argued: March 20, 2012          Decided: May 10, 2012

———————

Before TRAXLER, Chief Judge, and DUNCAN and DAVIS, Circuit Judges.

———————

Affirmed by unpublished per curiam opinion.

———————

**ARGUED:** Matthew Alan Wartel, Alexandria, Virginia, for Appellant.  George Zachary Terwilliger, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee. **ON BRIEF:** Neil H. MacBride, United States Attorney, Alexandria, Virginia, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Ajmal Aman appeals from his conviction for arson, see 18 U.S.C. § 844(i), arguing that the application of § 844(i) to his conduct exceeds the federal government's authority under the Commerce Clause. We find Aman's argument unpersuasive, and we affirm his conviction and sentence.

I.

Aman was one of several owners of Bridges Billiards and Grill, a bar and restaurant located in Fairfax, Virginia. Bridges occupied almost 10,000 square feet of leased space on the first floor of a seven-story commercial office building that housed more than seventy other businesses.

On November 1, 2009, an intentionally-set fire (started through use of gasoline and lighter fluid as accelerants) destroyed the restaurant's office and damaged other parts of the restaurant. Aman was alone in the restaurant when the fire started. He fled the building and ran down the street to a nearby fire station to report the fire. The fire had already been reported, and a unit was on its way to the restaurant even as Aman was pounding on the fire station door.

Aman made his way back to the Bridges parking lot and spoke to Captain Gregory Rausch, one of the firefighters on the scene. Aman told Rausch that he had been closing up the restaurant when

2

the fire started and that, in his rush to leave the building, he had left his keys inside the restaurant. Rausch testified that Aman strongly smelled of lighter fluid and that Aman's clothes -- an orange jumpsuit worn as a costume for the restaurant's Halloween party -- looked stiff and melted from the knees down. While evaluating Aman for burns and other injuries, Rausch noticed a large amount of cash stuffed into one of Aman's boots.

A box containing bottles of lighter fluid, jugs of gasoline, and Aman's wallet, car keys, and cell phone was found in the undamaged part of the restaurant. Another bottle of lighter fluid was found in Aman's car, Aman's fingerprints were found on some of the gasoline and lighter-fluid containers, and grocery-store surveillance footage showed Aman buying multiple bottles of lighter fluid in the days before the fire. Not surprisingly, the jury found this evidence sufficient to convict Aman of arson.

## II.

Under § 844(i), it is a federal crime "to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property <u>used in</u> interstate or foreign commerce or <u>in any activity affecting</u> interstate or foreign commerce." 18 U.S.C. § 844(i) (emphasis added). On appeal, Aman argues that the operation of Bridges, a local bar

3

and restaurant serving a predominantly local customer base, did not substantially affect interstate commerce, as he asserts is required by United States v. Lopez, 514 U.S. 549 (1995). Aman therefore contends that applying § 844(i) to his conduct exceeds the government's authority under the Commerce Clause and that his conviction must be reversed. We disagree.

In Jones v. United States, 529 U.S. 848 (2000), the Supreme Court held that "an owner-occupied residence not used for any commercial purpose does not qualify as property 'used in' commerce or commerce-affecting activity," as required by § 844(i), and that "arson of such a dwelling, therefore, is not subject to federal prosecution under § 844(i)." Id. at 850-51. The Court rejected the government's claim that the house was used in interstate activities because it was financed and insured through out-of-state companies and received natural gas from an out-of-state supplier. See id. at 855. The Court explained:

> Were we to adopt the Government's expansive interpretation of § 844(i), hardly a building in the land would fall outside the federal statute's domain. Practically every building in our cities, towns, and rural areas is constructed with supplies that have moved in interstate commerce, served by utilities that have an interstate connection, financed or insured by enterprises that do business across state lines, or bears some other trace of interstate commerce. If such connections sufficed to trigger § 844(i), the statute's limiting language, "used in" any commerce-affecting activity, would have no office.

4

Id. at 857 (citation omitted).  The Court instead concluded that the statute's jurisdictional hook -- the requirement that the building itself be used in an activity affecting interstate commerce -- "is most sensibly read to mean active employment for commercial purposes, and not merely a passive, passing, or past connection to commerce."  Id. at 855.  The Court explained that by limiting federal arson prosecutions in this manner, the constitutional question "brought to the fore in Lopez" could be avoided.  Id. at 858.

Aman's constitutional challenge thus turns on whether the property at issue in this case was actively employed for commercial purposes at the time of the fire.  If that standard is met, then the connection to interstate commerce is substantial enough to quell any Lopez-based concerns about the propriety of the prosecution.  See Jones, 529 U.S. at 858; United States v. Patton, 451 F.3d 615, 633 (10th Cir. 2006) (explaining that § 844(i)'s jurisdictional hook as interpreted in Jones "serve[s] the purpose of limiting the statute to arson cases where there really was a substantial and non-attenuated effect on interstate commerce").

"The Jones [C]ourt established a two-part inquiry to determine whether a building fits within the strictures of § 844(i).  First, courts must inquire 'into the function of the building itself.'  Second, courts must determine 'whether that

5

function affects interstate commerce.'" United States v. Terry, 257 F.3d 366, 368-69 (4th Cir. 2001) (quoting Jones, 529 U.S. at 854). As we explain, whether the relevant "building" is the seven-story office tower that houses the restaurant or simply the restaurant itself, the function of that building affects interstate commerce as a matter of law.

In Russell v. United States, 471 U.S. 858 (1985), the Court held that where property is being rented to tenants at the time of an arson, it is "unquestionably" being used in an activity affecting commerce within the meaning of § 844(i). Id. at 862. As the Court explained,

> We need not rely on the connection between the market for residential units and the interstate movement of people to recognize that the local rental of an apartment unit is merely an element of a much broader commercial market in rental properties. The congressional power to regulate the class of activities that constitute the rental market for real estate includes the power to regulate individual activity within that class.

Id. (footnote and internal quotation marks omitted).

Like the two-unit apartment building in Russell, the 70-tenant office building in this case was a part of the broad commercial market in rental properties. The office building thus was being actively employed in a commercial activity that affects interstate commerce as a matter of law. See United States v. Parsons, 993 F.2d 38, 40 (4th Cir. 1993) ("[T]he plain language of Russell controls. If the house was 'rental

6

property' at the time of the arson, it was used in an activity that affects interstate commerce, and Parsons' conduct was within the statute."); see also United States v. Guzman, 603 F.3d 99, 109 (1st Cir.) ("The rule in this circuit is that rental property is per se sufficiently connected to interstate commerce to confer federal jurisdiction under Section 844(i)." (internal quotation marks omitted)), cert. denied, 131 S. Ct. 487 (2010); United States v. Iodice, 525 F.3d 179, 183 n.2 (2d Cir. 2008) (concluding that Russell established a per se rule that rental property is property used in an activity affecting interstate commerce).

We would reach the same conclusion even if we disregarded the rental-property aspects of this case and viewed the restaurant itself as the only relevant building. Bridges was operating as a bar and restaurant at the time of the fire, and that commercial use of the property is enough to establish the necessary connection to interstate commerce. See Terry, 257 F.3d at 370-71 (finding commercial daycare center operated inside church building sufficient to bring church building within the scope of § 844(i): "In both Russell and in the case at bar, the commercial use of the property brings the building within § 844(i)'s jurisdictional nexus."); see also United States v. Soy, 413 F.3d 594, 603-04 (7th Cir. 2005) ("[T]he per se rule set forth in Russell applies equally to restaurants and

7

bars, and, consequently, buildings housing these establishments are 'used in' interstate commerce for purposes of § 844(i)."); United States v. Joyner, 201 F.3d 61, 79 (2d Cir. 2000) ("Russell mandates the adoption of a similar per se rule regarding bars or restaurants."); United States v. Serang, 156 F.3d 910, 913-14 (9th Cir. 1998) ("A restaurant is clearly commercial property. . . . As a commercial enterprise, it had a per se substantial effect on interstate commerce and is subject to regulation by Congress in § 844(i).").

The evidence presented at trial was more than sufficient to establish the critical "jurisdictional" facts -- that Bridges at the time of the fire was an active bar and restaurant operating out of leased space in a commercial office building. Aman does not dispute the sufficiency of this evidence, and he acknowledges that Bridges was "an overtly commercial establishment." Brief of Appellant at 14. Aman insists, however, that "[s]imply engaging in business does not ipso facto create a substantial [e]ffect on commerce. Otherwise, limits [on] Congress' authority would collapse into a rule that allowed federal jurisdiction over all commerce." Id. Again we disagree.

Aman's argument in this regard is premised entirely on Lopez; Aman does not discuss (or even cite) Jones or Russell in his brief. Although Russell was decided well before the Court

issued its opinion in Lopez, the Court effectively re-affirmed Russell's holding in Jones. See Jones, 529 U.S. at 856-57. Moreover, the Jones Court explained that its construction of § 844(i) was "reinforced by" its opinion in Lopez, id. at 851, and that the statute raises no Lopez concerns so long as it is applied only to arson of property that was actively employed for commercial purposes, see id. at 857-58. Aman may well believe that the active-employment-for-commercial-purposes standard in fact is inconsistent with Lopez, but that is a matter for the Supreme Court, not this court. See United States v. Young, 609 F.3d 348, 356 (4th Cir. 2010).

## III.

Because the operation of a restaurant in a leased space is an activity that affects interstate commerce, we reject Aman's claim that the application of § 844(i) to his conduct exceeds the federal government's authority under the Commerce Clause. Accordingly, we hereby affirm Aman's conviction and sentence.

AFFIRMED