# United States Court of Appeals
## For the First Circuit

No. 10-1555

UNITED STATES OF AMERICA

Appellee,

v.

DOUGLAS HERSOM,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby,  U.S. District Judge]

Before

Torruella, Circuit Judge,
Souter, Associate Justice,[*]
and Boudin, Circuit Judge.

  Stuart W. Tisdale, Jr., with whom Tisdale & Davis, PA was on brief, for appellant.
  Margaret D. McGaughey, Appellate Chief, with whom Richard Murphy, United States Attorney, was on brief, for appellee.

September 22, 2011

  [*]The Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**SOUTER, Associate Justice.** In this, his second appeal, see United States v. Hersom, 588 F.3d 60 (1st Cir. 2009), Douglas Hersom assigns error to the district court's denial of his motion to withdraw his guilty plea to arson of a building owned by an organization receiving federal financial assistance, see 18 U.S.C. § 844(f). After the prior appeal led to remand for resentencing, Hersom claimed that the statute was inapplicable, not because the owner (Greely Capital, LLC) was merely an indirect recipient of benefits, as argued when he was last in this court, but because all the redevelopment funds lent to Greely had been disbursed to it, so that it was no longer "receiving" the financial assistance when he committed the arson. The government opposed the motion, as it does here, on grounds of waiver, law of the case, and failure to qualify to withdraw the plea under Federal Rule of Criminal Procedure 11, as well as on the merits of the statutory construction argument. While the district judge had some question about reaching the merits, he did so and rejected Hersom's reading of the statute. We affirm.

There is no doubt that the trial judge would have had support for finding the issue waived, as distinct from forfeited, but the record is not unequivocal. When the case was first before the district court, defense counsel told someone in the court clerk's office that Hersom had come to think that Greely's receipt of the full amount of the federally funded loan before the fire

occurred made the statute inapplicable, and at the resentencing hearing after the first appeal the district court asked counsel whether he intended to get into that issue. The lawyer explained that he had discussed the matter with his client after doing some research and said, "I think that the issue is resolved."

As for applying the law of the case doctrine, that prior decision of an issue not raised in an interim appeal is binding in subsequent proceedings, the district court was uncertain. While this court had held the statute applicable on the facts, the argument based on completed receipt of benefits had not been ruled upon expressly prior to the appeal and was not raised in the appeal itself.

All such doubts were resolved in favor of reaching the merits because of what the trial judge saw as a powerful reason for giving full consideration to the motion to withdraw the guilty plea under the standard of fairness and justice imposed by Rule 11: Hersom's argument that the statute could not be applied after a completed benefit disbursement was in effect a claim of legal innocence that, if sound, would be a reason to grant the motion. See United States v. Abernathy, 83 F.3d 17, 19 (1st Cir. 1996); United States v. Parrilla-Tirado, 22 F.3d 368, 373 (1st Cir. 1994). There was no abuse of discretion in proceeding on this basis, see Parrilla-Tirado, 22 F.3d at 371, and we see no reason to pause further on the threshold objections before going to the merits of

the statutory claim beneath the motion to withdraw, which we consider de novo, being a purely legal matter.

The statutory definition of the crime charged against Hersom includes destroying "by . . . fire . . . any building . . . in whole or in part owned or possessed by . . . any institution or organization receiving Federal financial assistance." 18 U.S.C. § 844(f). Hersom does not now deny that Greely is an "organization" or that the loan it received to finance the rehabilitation of the burned building was federal financial assistance. The only issue is about the applicability of the present participle "receiving" to Greely, which got the money before the fire. Nor is there any question about the principles of statutory construction that should govern the scope of "receiving."

Hersom invokes the traditional "restraint in assessing the reach of a federal criminal statute, both out of deference to the prerogatives of Congress and out of concern that a fair warning should be given to the world in language that the common world will understand . . . ." Arthur Andersen LLP v. United States, 544 U.S. 696, 703 (2005) (internal quotation marks and citation omitted). We thus look to "the common perception," Jones v. United States, 529 U.S. 848, 856 (2000), evoked by the ordinary meaning of the words as used "in legislation as in conversation," id. at 855, that is, to what Justice Holmes spoke of as "the picture" produced by

the text in the common mind, <u>McBoyle</u> v. <u>United States</u>, 283 U.S. 25, 27 (1931).[1]

When statutes apply to transactions outside most people's everyday experience, as this one concededly does (the subject being government loan schemes), the fair warning that criminal liability presupposes must take account of the special circumstances, lest Justice Holmes's "picture" turn out to be an abstraction. So in this case our judgment about the adequacy of the notice that Hersom's act was covered may assume an understanding that federal financial assistance includes loans, and that a loan recipient is a party to a transaction that carries enduring advantages as well as continuing obligations until the loan is repaid (as this one had not been at the time of the fire).

When this fact of continuing contractual advantage is borne in mind, it points in two respects to a reading of § 844(f) as applying to Greely at the time of the arson, neither of which abuses common language usage. First, unlike an outright grant that becomes the recipient's property on receipt, the proceeds of a loan provide the borrower with the benefit of a property interest that belongs to the lender, and its advantage to the borrower lies in permission to make use of the loan throughout the period of its

---

[1]Hersom also invokes the rule to construe a statute sufficiently narrowly to avoid the risk of unconstitutionality, <u>see</u> <u>Jones</u>, 529 U.S. at 852, but we do not think this statue sails close enough to the wind to raise an issue about the scope of federal legislative jurisdiction.

term.  Its value is a product of time, and every day the borrower enjoys a benefit that would be missed (or, at least, no longer rightfully enjoyed) if the loan were (or could be) called for repayment.  It makes sense, then, to describe the borrower as receiving a benefit in the continuous use of the money throughout the term of the transaction.[2]

Second, this reading of "receiving" is confirmed by consideration of the constitutional authority Congress relied upon to enact the statute, which authorizes the statutory objective that is readily understandable by people without law degrees.  As we held before, Congress was acting under the Property Clause, U.S. Const. art. IV, § 3, cl. 2, the source of legislative power to make provision for federal property, by criminalizing the arson of a building belonging to a recipient of federal benefits (when related to those benefits).  Hersom, 588 F.3d at 62-63, 66.  Congress meant to protect a federal interest, not merely duplicate state criminal statutes, see id. at 63-65, and it is perfectly easy to understand that the point of protecting the building is to preserve either formal security for the loan or at least the premises housing activity likely to generate funds for repayment.  Obviously both the federal interest and the federal object endure throughout the

---

[2]Indeed even in the case of an individual's monthly social security benefit, it would not offend common usage to say he is receiving the benefit of the monthly payment throughout the month it is meant to cover.

term of the loan, while the building owner enjoys the benefit of using the federal funds.

We think anyone apprised of the loan scheme in question would think it was within the scope of normal usage to say Greely was receiving a federal benefit from the use of federal funds for whatever term the borrower enjoyed, and would consequently consider an arsonist fairly warned that if the building he happened to torch was related to a current federal loan, he would be guilty of the federal offense.

**Affirmed**.